[No. B055905. Second Dist., Div. Two. May 5, 1992.]

ANDREW GODWIN, Plaintiff and Appellant, v.
CITY OF BELLFLOWER et al., Defendants and Respondents.

**COUNSEL**

Paul M. Hittelman and Suzanne Rosentswieg for Plaintiff and Appellant.

Moore, Sorensen & Horner, Robert B. Horner, Baker, Silberberg & Keener and Constance A. Endelicato for Defendants and Respondents.

OPINION

MANELLA, J.*—

### ISSUE PRESENTED

Plaintiff, Andrew Godwin, appeals from a summary judgment entered in favor of defendants Virgilio Panganiban, M.D., and Robert Hart, M.D. The superior court found plaintiff's complaint for medical malpractice was untimely as against Drs. Panganiban and Hart, because it was filed after the applicable one-year statute of limitations. The court was called upon to interpret Code of Civil Procedure section 364, which requires a plaintiff to give 90 days' notice before bringing a medical malpractice suit against a health care provider, but extends the applicable statute of limitations by 90 days if notice is served within the final 90 days of the original limitations period. The precise issue presented here is whether, when a plaintiff who knows the names of treating doctors serves a notice of intent to sue on the hospital within 90 days of the running of the statute of limitations, but fails to name or serve the known doctors, such notice extends the statute of limitations as to the unnamed doctors. Affirming the superior court, we hold that it does not.

### STATEMENT OF FACTS

The undisputed facts before the superior court established that on December 14, 1984, plaintiff was treated at Bellflower City Hospital for wrist injuries sustained that day after falling off a ladder while working as an overhead door installer. After being examined by Dr. Panganiban, plaintiff was referred to radiologist Dr. Hart, who performed X-rays and prepared a report. Dr. Panganiban then diagnosed plaintiff's injuries as bilateral wrist sprains and strain and instructed him not to resume work until he returned to the clinic for a follow-up visit. Four days later plaintiff returned to the clinic. After examining him and concluding there was an overall improvement, Dr. Panganiban told plaintiff he could return to work the following day.

On April 30, 1986, plaintiff contacted another physician who advised him that his wrists had been fractured, rather than sprained.

*Judge of the Municipal Court of the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.

On April 16, 1987, plaintiff's counsel served a Code of Civil Procedure section 364 "claim for damages" notice of intent to sue on Bellflower City Hospital.[1]

The notice was addressed to Bellflower Hospital and provided as follows:

"This is to advise you that we represent ANDREW GODWIN, who was a patient of yours on December 14, 1984. Our investigation discloses that during the course of your medical care and treatment, you negligently and carelessly failed to diagnosis [sic] his broken wrist. That claimant was unaware of your negligence and carelessness until April 30, 1986 when he sought additional medical care and treatment and was advised of his true medical condition. The exact amount of special and general damages sustained by ANDREW GODWIN are unknown at this time, however, said information will be supplied to you as it becomes available. [¶] We suggest that you contact your carrier to investigate this matter and communicate with us. In addition, we ask that you review your records. Accordingly, we are marking up this file to July 15, 1987, thus giving you ample time to respond. In the event that no response is made on or before said date, we shall cause a Summons and Complaint to be filed and served upon you without further notice." The notice directed correspondence to be sent to plaintiff's then counsel.

Neither Dr. Panganiban nor Dr. Hart was named in the notice. Neither was served with a copy. It is undisputed that neither doctor knew of plaintiff's intention to sue until they were served with the complaint. It is also undisputed that plaintiff knew of Dr. Panganiban's and Dr. Hart's identities at the time he served his section 364 notice on the hospital.

On July 7, 1987, 82 days after service of the section 364 notice and 1 year and 68 days after plaintiff's second diagnosis alerting him to his cause of

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise noted. Section 364 provides in relevant part:

"(a)   No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action.

"(b)   No particular form of notice is required, but it shall notify the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered.

"(c)   The notice may be served in the manner prescribed in Chapter 5 (commencing with Section 1010) of Title 14 of Part 2.

"(d)   If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice.

"(e)   The provisions of this section shall not be applicable with respect to any defendant whose name is unknown to the plaintiff at the time of filing the complaint and who is identified therein by a fictitious name, as provided in Section 474."

action, plaintiff filed a medical malpractice action. In his complaint he named as defendants the City of Bellflower, Bellflower City Hospital, Dr. Virgilio Panganiban, and Dr. Robert Hart.

On August 28, 1990, defendant Panganiban filed a motion for summary judgment, claiming plaintiff's action was barred by the statute of limitations. Defendant Hart later joined in the motion. Defendants argued that because plaintiff had failed to give them the 90 days' notice of intent to sue required by section 364, subdivision (a), the provision of section 364, subdivision (d) extending the statute of limitations 90 days beyond the 1-year limitations period was not triggered; thus, plaintiff's complaint, filed more than one year after the discovery of his cause of action, was time barred.

After a hearing, the court granted defendants' motion. The court concluded that even if Panganiban and Hart were assumed to be agents of the hospital, plaintiff's notice to the hospital did not constitute notice to Panganiban and Hart, the extension of the one-year statute of limitations was not triggered as to them, and therefore the action was time barred. This appeal followed.

Plaintiff's sole claim on appeal is that his service of the section 364 notice on the hospital was also service on Drs. Panganiban and Hart as the hospital's agents, and that the service tolled the statute of limitations as to the doctors as well as the hospital, thus making the filing of his complaint against the doctors timely. He relies on doctrines of agency to impute the hospital's knowledge to the two doctors.

## DISCUSSION

Under section 340.5, a medical malpractice action must be brought within three years after the date of injury or one year after the plaintiff discovers or should have discovered the injury, whichever occurs first. (*Braham* v. *Sorenson* (1981) 119 Cal.App.3d 367, 370 [174 Cal.Rptr. 39].) In the instant case, the one-year statute of limitations ordinarily would have expired on April 30, 1987, one year from the date plaintiff received the second diagnosis indicating his wrists had been fractured. His April 16, 1987, section 364, subdivision (a) notice to the hospital was served within the final 90 days of that 1-year period, thus triggering the extension of the 1-year limitations period for an additional 90 days. There is no dispute plaintiff's complaint, filed July 7, 1987, was timely as to the hospital. The sole question on appeal is whether plaintiff's service on the hospital of the section 364, subdivision (a) notice, which did not name the known doctors, triggered the provisions of section 364, subdivision (d), extending the statute of limitations as to those doctors. Acknowledging that this is a case of first impression, we hold that it did not.

Section 364, subdivisions (a) and (d), are part of the 1975 revisions to the Code of Civil Procedure enacted as part of the Medical Injury Compensation Reform Act (MICRA). MICRA was enacted in response to a health care crisis caused by a rapid increase in premiums for medical malpractice insurance. (*Woods* v. *Young* (1991) 53 Cal.3d 315, 319 [279 Cal.Rptr. 613, 807 P.2d 455].) ■ Its provisions include the requirement under section 364, subdivision (a) that "[n]o action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action."[2] The purpose of the provision was to encourage settlement of claims based on professional negligence before actual commencement of a lawsuit, by "establishing a procedure that encourages the parties to negotiate 'outside the structure and atmosphere of the formal litigation process.' (Jenkins & Schweinfurth, *California's Medical Injury Compensation Reform Act: An Equal Protection Challenge* (1979) 52 So.Cal.L.Rev. 829, 963, fn. omitted. . . ." (*Woods* v. *Young, supra,* 53 Cal.3d at p. 320.)[3]

To accommodate the desire for prelitigation notice without effectively shortening the applicable statute of limitations period by 90 days, the Legislature enacted section 364, subdivision (d), providing that "[i]f the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice." This provision has been interpreted to add an additional 90 days to the end of the applicable limitations period. (*Braham* v. *Sorenson, supra,* 119 Cal.App.3d at pp. 372-373; see also *Woods* v. *Young, supra,* 53 Cal.3d at pp. 321-322, 328.)

■ In *Anson* v. *County of Merced* (1988) 202 Cal.App.3d 1195 [249 Cal.Rptr. 457], the court considered whether a claim filed under Government Code section 910 satisfied the notice requirements of Code of Civil Procedure section 364, subdivision (a). In holding it did not, the court focused on the different requirements in the code sections: "Code of Civil Procedure section 364 requires specificity with regard to the nature of the injuries

---

[2]Section 364, subdivision (f) defines "health care provider" as follows:

"(f)  For the purposes of this section:

"(1)  'Health care provider' means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code, or licensed pursuant to the Osteopathic Initiative Act, or the Chiropractic Initiative Act, or licensed pursuant to Chapter 2.5 (commencing with Section 1440) of Division 2 of the Health and Safety Code; and any clinic, health dispensary, or health facility, licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code. "Health care provider" includes the legal representatives of a health care provider. . . ."

[3]No notice is required "with respect to any defendant whose name is unknown to the plaintiff at the time of filing the complaint and who is identified therein by a fictitious name, as provided in Section 474." (§ 364, subd. (e).)

suffered where Government Code section 910 clearly does not. Because the purpose of the requirements of Code of Civil Procedure section 364 is to place the health care provider on notice as to the alleged injuries which have been suffered by the plaintiff, this distinction is a crucial one." (202 Cal.App.3d at p. 1204.) We agree that the specific notice requirements of section 364, subdivision (a) were designed to serve a distinct purpose, viz., to give a health care provider notice of the imminence of suit, and thus promote prelitigation settlement. This purpose can only be effectuated if the health care provider has actual notice.

Plaintiff contends that notice to the hospital should be held sufficient notice to Panganiban and Hart because, as their principal, the hospital's knowledge was imputed to them.[4] We find plaintiff's reliance on Civil Code section 2332 unpersuasive. That section, entitled "NOTICE TO AGENT, WHEN NOTICE TO PRINCIPAL," provides: "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." By its very terms, Civil Code section 2332 speaks to imputation of knowledge "[a]s against a principal"; it says nothing about imputing a principal entity's knowledge to its agents. Similarly, the cases relied upon by plaintiff, *Davis* v. *Local Union No. 11, Internat. Etc. of Elec. Workers* (1971) 16 Cal.App.3d 686 [94 Cal.Rptr. 562], and *Capron* v. *State of California* (1966) 247 Cal.App.2d 212 [55 Cal.Rptr. 330], both involved imputation of agents' knowledge to principals, not vice versa. We find no principle in the law of agency to support a holding that an agent must be charged with knowledge of facts given to a principal business entity. Similarly, plaintiff's argument that the hospital can act only through its agents does not advance plaintiff's position, as there is no principle of agency law imputing the knowledge of one agent to all others.

Nor, in the instant case, do policy considerations militate in favor of such a holding. As noted above, unless a health care provider has actual notice of a party's intent to sue, no prelitigation settlement can be considered, much less reached. Plaintiff's argument that the hospital was responsible for identifying and notifying the individual doctors ignores the undisputed fact that at the time he served the section 364 notice, plaintiff was aware of the doctors' identities and could have notified them. There can be little question that plaintiff was well positioned to comply with both the letter and spirit of section 364's notice requirement.

---

[4]As noted above, in ruling on the summary judgment motion, the trial court assumed, without deciding, that the doctors were agents of the hospital. Like the trial court, we do not resolve this factual issue, as we hold the agency relationship advanced by plaintiff did not relieve him from serving notice on the doctors of whose identities he was aware.

While the Legislature recognized certain exceptions to the actual notice requirement, those exceptions do not apply here.[5] Without addressing whether, under different circumstances, something less than actual notice would be sufficient, we hold that where, as here, a plaintiff has actual knowledge of the identities of the treating physicians whom he intends to sue, section 364, subdivision (a) notice on the hospital, without naming the physicians, is insufficient notice to them to extend the statute of limitations under section 364, subdivision (d).

The judgment is affirmed.

Fukuto, Acting P. J., and Nott, J., concurred.

---

[5]For example, a plaintiff is relieved of the obligation to give prelitigation notice if he is unaware of the physician's identity. See footnote 3, *ante*; section 364, subdivision (e).

Similarly, section 365 provides that failure to comply with the notice requirements of section 364 "shall not invalidate any proceedings of any court of this state, nor shall it affect the jurisdiction of the court to render a judgment therein. . . ." Section 365 makes clear that failure to give notice alone will not deprive a court of jurisdiction. Nothing in section 365 suggests, however, that noncompliance with section 364, subdivision (a) extends jurisdiction where none otherwise exists.