[No. B072854. Second Dist., Div. Two. Mar. 1, 1994.]

IZHAK HANOOKA et al., Plaintiffs and Appellants, v.
JACK PIVKO et al., Defendants and Respondents.

1554

## COUNSEL

Kinsella, Boesch, Fujikawa & Towle, Philip W. Boesch, Jr., and David A. Pash for Plaintiffs and Appellants.

Hillsinger & Costanzo, Sarah Yoseloff, Jane O'Donnell, Bonne, Bridges, Mueller, O'Keefe & Nichols and Keith Staub for Defendants and Respondents.

## OPINION

**NOTT, J.**—We are asked to determine whether a plaintiff's service of defendant doctors at the hospital where they maintained staff privileges complies with the notice provision of Code of Civil Procedure section 364 in order to extend the statute of limitations, and if not, whether relief can be granted pursuant to Code of Civil Procedure[1] section 473. We answer both questions in the negative.

In this case, appellants Izhak Hanooka and Rina Gay Hanooka appeal from a judgment entered after the trial court granted summary judgment in favor of respondents Jack Pivko, M.D., and John Menkes, M.D. We affirm.

### FACTS

Appellant Rina Hanooka flew from Israel to Los Angeles with her infant son Ben to seek treatment for his medical condition, idiopathic infantile

---

[1] All further code section references shall be to the Code of Civil Procedure unless otherwise indicated.

spasms. On August 13, 1990, respondent Menkes, a pediatric neurologist, examined the child at University of California, Los Angeles (UCLA) Medical Center. Menkes had maintained a private practice in Beverly Hills since 1989, and moved his practice to another location within the same city prior to being served with a summons and complaint in this action. On August 15, 1990, the infant was examined by respondent Pivko at his office at 8635 West 3d Street in Los Angeles, where Pivko had been located for 11 years. Hospitalization was arranged for the infant at Cedars-Sinai Medical Center (Cedars-Sinai) where both Pivko and Menkes maintained staff privileges. After the infant was discharged on August 20, 1990, from Cedars-Sinai, he was seen on at least five occasions at Pivko's private office before being readmitted to Cedars-Sinai on September 5, 1990, with respiratory problems. He died on September 27, 1990.

On July 31, 1991, appellants mailed a notice of intent to commence action against health care providers naming Jack Pivko, M.D., John Menkes, M.D., and Thomas Mundy, M.D.,[2] at Cedars-Sinai. The notice was addressed to Mr. Ernest Moreno, Medical Records, Cedars-Sinai. On that same day, appellants mailed a separate notice to the same address naming Cedars-Sinai.

Joan Hajny-Leeds, director of Cedars-Sinai's risk management department, instructed her assistant to return the notices directed to Drs. Menkes, Pivko and Mundy to appellants' attorney. On August 12, 1991, the notice of intent to sue Cedars-Sinai, rather than the individual physicians, was inadvertently returned to appellants' attorney.

Appellants filed their complaint on October 17, 1991, alleging negligence.[3] Respondents were served with a summons and complaint in January 1992. In their respective motions for summary judgment, both doctors stated in declarations that prior to being served with the summons and complaint, they had no notice of appellants' intent to commence a legal action. Neither doctor maintained offices at Cedars-Sinai, nor had arrangements been made with the hospital for receipt of mail on their behalf. The trial court granted appellants' request for a 45-day continuance to allow them to take discovery regarding the doctors' actual receipt of appellants' notice of intent to sue. The court ultimately granted the motion for summary judgment on the basis that the doctors had not received actual notice of intent to sue, that the statute of limitations had not been tolled, and that therefore the complaint was untimely. Appellants' subsequent motion for an order granting relief under section 473 was denied. This appeal follows.

---

[2]Dr. Mundy is not a party to this appeal.

[3]Prior to the summary judgment hearing, appellants agreed to strike a second cause of action.

## DISCUSSION

### I. *Standard of Review*

We first note that summary judgment is granted if all the submitted papers show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (§ 437c, subd. (c).) A defendant seeking summary judgment has met the burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action cannot be established. (§ 437c, subd. (n)(2); see *Rowe* v. *Superior Court* (1993) 15 Cal.App.4th 1711, 1724 [19 Cal.Rptr.2d 625].) Once the defendant's burden is met, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action. (*Ibid.*) In reviewing the propriety of a summary judgment, the appellate court independently reviews the record that was before the trial court. (*Chevron U.S.A., Inc.* v. *Superior Court* (1992) 4 Cal.App.4th 544, 548 [5 Cal.Rptr.2d 674], review den.) We must determine whether the facts as shown by the parties give rise to a triable issue of material fact. (*Walker* v. *Blue Cross of California* (1992) 4 Cal.App.4th 985, 990 [6 Cal.Rptr.2d 184].) In making this determination, the moving party's affidavits are strictly construed while those of the opposing party are liberally construed. (*Ibid.*)

### II. *Appellants Did Not Comply With Section 364, Subdivision (a)*

The statute of limitations period for a negligence action for personal injury or death against a health care provider is three years after the date of the injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury. (§ 340.5.) Section 364, subdivision (a), enacted pursuant to the Medical Injury Compensation Reform Act, states that a plaintiff must give a health care provider 90 days' prior notice of intention to commence a medical malpractice action. Subdivision (d) of that section provides that the time for commencement of the action shall be extended 90 days from service of the notice, providing that the notice of intent to sue be served within 90 days prior to the expiration of the statute of limitations period.

Resolving conflicts among various appellate courts as to the correct application of section 364, our Supreme Court held in *Woods* v. *Young* (1991) 53 Cal.3d 315 [279 Cal.Rptr. 613, 807 P.2d 455], that when the 90-day notice of intent to sue required by section 364, subdivision (a) is served in the last 90 days of the 1-year statute of limitations, section 340.5 is tolled for 90 days. (53 Cal.3d at p. 328.) In so concluding, the court recognized the purpose of the 90-day notice is to encourage negotiation and settlement outside the formal litigation process. (*Id.* at p. 320.)

Recently, in *Godwin* v. *City of Bellflower* (1992) 5 Cal.App.4th 1625 [7 Cal.Rptr.2d 524], we held that a plaintiff's service on a hospital of the section 364, subdivision (a) notice which did not name or serve the known defendant doctors did not extend the limitations period under section 364, subdivision (d). There, plaintiff served his 364, subdivision (a) notice on Bellflower City Hospital, where he had been treated by two doctors for injuries sustained in falling off a ladder. Neither doctor knew of the plaintiff's intention to sue until they were served with the complaint, because neither doctor was named or served with the notice. However, it was undisputed that the plaintiff knew of the doctors' identities at the time he served notice on the hospital.

Here, appellants filed their complaint on October 17, 1991, one year and twenty days after infant Ben Hanooka's death on September 27, 1990. Their notices of intent to sue were served on the hospital on July 31, 1991. It is undisputed that appellants were aware of the identities of Menkes and Pivko. As noted, Mrs. Hanooka and her son had visited Pivko at his office on at least six occasions, and initially had seen Menkes at the UCLA facility.

Notwithstanding these facts, appellants urge that the one-year statutory time period should be tolled for ninety days in accordance with section 364, subdivision (d). Contrary to appellants' argument, our holding in *Godwin* v. *City of Bellflower*, *supra*, 5 Cal.App.4th 1625, does not espouse the proposition that notice would have been sufficient had the physicians' names also appeared in the notice served on the hospital. As support for their argument, appellants cite the following language from the opinion: ". . . where . . . a plaintiff has actual knowledge of the identities of the treating physicians whom he intends to sue, section 364, subdivision (a) notice on the hospital, *without naming the physicians*, is insufficient notice to them to extend the statute of limitations under section 364, subdivision (d)." (*Id.* at p. 1632, italics supplied by appellants.) Appellants reason that the converse would be true: were the physicians named, service on the hospital would be sufficient. We find appellants' sophistical attempt to broaden our holding in *Godwin* weak, especially in light of their failure to include the limiting phrase immediately preceding the cited language, which reads: "Without addressing whether, under different circumstances, something less than actual notice would be sufficient . . . ." (*Ibid.*)

Adopting appellants' position would run counter to the purposes of giving a health care provider notice of the imminence of suit and promoting prelitigation settlement, which can only be effectuated if the health care provider has actual notice. (5 Cal.App.4th at p. 1631.) Moreover, as discussed in *Godwin*, we are reluctant to impute knowledge of a principal to its

agent, or to assign responsibility to a hospital for identifying and notifying individual doctors of actions commencing against them. (*Ibid.*)

We find that the appellants here were in a position similar to that of the plaintiffs in *Godwin*, in that they were aware of the doctors' identities and could easily have effected service of the notice. The evidence produced by appellants to suggest that responsibility should lie with the hospital is unpersuasive.[4]

*Bein* v. *Brechtel-Jochim Group, Inc.* (1992) 6 Cal.App.4th 1387 [8 Cal.Rptr.2d 351], cited by appellants, is inapposite. There, the court held that a security guard at the entrance of a gated community can be considered a competent member of the household and the person in charge as required by the substitute service provision of section 415.20. The court determined that the purpose of section 415.20 is to ensure service on a "responsible person," which, in that case, was the guard authorized by the defendants to control access to them and their residence. (6 Cal.App.4th at p. 1393.) We reject appellants' assertion that service for purposes of section 364, subdivision (a) is similarly valid if it is "reasonably calculated" to afford actual notice. As we previously stated in *Godwin*, the purpose of the specific notice requirement of section 364, subdivision (a) is to promote prelitigation settlement, which can only be effectuated if the health care provider has actual notice. (*Godwin* v. *City of Bellflower, supra,* 5 Cal.App.4th at p. 1631.)

We conclude that where respondent doctors did not receive actual notice pursuant to section 364, subdivision (a), appellants cannot take advantage of the 90-day extension period provided by section 364, subdivision (d). Furthermore, we hold that a plaintiff cannot rely on a hospital to forward section 364, subdivision (a) notices to individual physicians where, as here, the plaintiff has knowledge of the identity and location of the physicians.[5]

---

[4]Appellants cite to Pivko's and Menkes's deposition testimony, in which they state that all of Pivko's patients and 25 percent or less of Menkes's patients are admitted to Cedars-Sinai. Appellants also point to a Cedars-Sinai medical records technician's deposition testimony that the hospital has a written policy of forwarding mail to physicians. However, the employee also stated that legal documents were forwarded to Ms. Hajny-Leeds of the risk management department. Moreover, Ms. Hajny-Leeds stated that the hospital had no written policy concerning the forwarding of mail to doctors and, as previously noted, she instructed an employee to return to appellants' counsel the notice directed to respondents. We also decline to attribute persuasive value to documents submitted by appellants from an unrelated action showing that Cedars-Sinai forwarded a section 364, subdivision (d) notice to a physician subsequent to the incident before us.

[5]We also dismiss appellants' argument, footnoted within the "Facts" portion of their brief, that section 351, which excludes time spent by defendants out of state following the accrual of the cause of action in computing the statute of limitations, might apply in light of

### III. *Section 473 Does Not Apply to Section 364*

■ Appellants next assert that the trial court abused its discretion in denying their motion for relief under section 473. We conclude that section 473 applies neither to section 340.5 nor to section 364, and in any event, appellants' service of the section 364, subdivision (d) notice on the doctors at the hospital did not constitute excusable neglect.

Section 473 provides, in pertinent part: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."

■ In general, section 473 is liberally applied, and a court may grant relief under that section in the absence of an express provision to the contrary. (*McCormick* v. *Board of Supervisors* (1988) 198 Cal.App.3d 352, 359 [243 Cal.Rptr. 617].) Among other situations, section 473 has been used to set aside a request for admissions (*Elston* v. *City of Turlock* (1985) 38 Cal.3d 227 [211 Cal.Rptr. 416, 695 P.2d 713]) an attorney's unauthorized actions (*Romadka* v. *Hoge* (1991) 232 Cal.App.3d 1231, 1237 [283 Cal.Rptr. 878]) and a default judgment. (*Pearson* v. *Continental Airlines* (1970) 11 Cal.App.3d 613, 619 [89 Cal.Rptr. 853].) Under limited circumstances, section 473 applies to amendment of pleadings after the statute of limitations has run, that is, where "recovery is sought in both pleadings on the same general set of facts" or to correct a misdescription of a party. (*Kupka* v. *Board of Administration* (1981) 122 Cal.App.3d 791, 795 [176 Cal.Rptr. 214].) Application of section 473 is not unlimited, however. It cannot excuse a late motion for new trial or be used to add a new party. (122 Cal.App.3d 795.)

■ Statutes of limitations are generally regarded as inflexible, and are " ' "upheld and enforced regardless of personal hardship." ' " (122 Cal.App.3d at p. 794.) However, some limitations statutes provide for an extension of the limitation period on a showing of good cause, which has been interpreted as equivalent to a showing under section 473. (122 Cal.App.3d at p. 795.) Where the statute lacks an explicit provision for extension, ". . . it must be inferred the Legislature did not intend to permit relief on grounds of good cause or under section 473. [Citation.]" (*Ibid.*)

In *Kupka*, by writ of mandate, petitioner sought judicial review of an administrative decision under the Administrative Procedure Act. (Gov.

---

respondents' failure to eliminate possible issues of fact regarding their whereabouts during the year and 20 days following infant Hanooka's death. The general tolling provision of section 351 is not applicable to medical malpractice actions. (See, e.g., *Fogarty* v. *Superior Court* (1981) 117 Cal.App.3d 316, 320 [172 Cal.Rptr. 594] [general tolling statute of § 352 does not control over § 340.5].)

Code, § 11370 et seq.) According to Government Code section 11523, his petition was subject to a 30-day statute of limitations period, commencing after the last day on which reconsideration can be ordered. The court refused to apply section 473 to avoid the statute of limitations, finding that "Government Code section 11523 contains no provision extending the filing period on a showing of good cause, and the very absence of such a provision must be taken to mean that no such extension may be granted." (122 Cal.App.3d at p. 797.)

More specific in its application to the facts of the instant case is the holding in *Gutierrez* v. *Mofid* (1985) 39 Cal.3d 892 [218 Cal.Rptr. 313, 705 P.2d 886]. Our Supreme Court concluded that the time of "discovery" of an injury is not postponed for the purpose of section 340.5 when an attorney advises that there is no legal remedy. There, the plaintiff attempted to apply section 473 to avoid the statute of limitations in a medical malpractice action on the basis that the first law firm she consulted advised her that there was "no provable malpractice." The plaintiff asserted that her unsuccessful inquiries should have delayed expiration of the limitations period, analogous to the government claim-statute relief provision. Government Code section 911.6, subdivision (b) specifically provides that leave to file a late claim in an action against a governmental agency must be granted if caused by "mistake, inadvertence, surprise or excusable neglect" and "the public entity was not prejudiced in its defense of the claim" by such delay. Characterizing the 100-day government claim requirement as "an obstacle in addition to the normal limitations period applicable to the tort alleged," the court affirmed denial of relief under section 473. It held that the justification for relief from the "harsh and technical" deadline of the government claim statute does not apply to the one-year limitations period of section 340.5. (*Gutierrez* v. *Mofid*, *supra*, at p. 902.)

As noted in *Gutierrez*, the one-year limitations period for medical malpractice provided for in section 340.5 expires one year after discovery of an injury. Unlike the three-year period, which is tolled " '(1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person,' " the one-year period is not subject to extension. (39 Cal.3d at pp. 896, 902.) The *Gutierrez* court noted that ". . . the Legislature has made no provision for relief on general grounds of 'excusable neglect' to file suit on time. In other words, in medical malpractice cases we must examine whether plaintiff exercised 'reasonable diligence' in discovering his 'injury,'

but the malpractice limitations statute forecloses a more general inquiry whether he was nonetheless diligent in bringing his action." (*Id.* at p. 902.)[6]

We hold that appellants cannot extend the medical malpractice statute of limitations, section 340.5, by applying section 473 to the notice provision of section 364. Section 340.5 makes no provision for an extension of a limitations period on a showing of good cause, or specifically under section 473. Indeed, section 340.5 prohibits tolling beyond the three-year period except in particular circumstances, and no tolling is provided at all for the one-year period following discovery. Section 364, which contains a limitations period requiring 90 days' notice prior to commencing a medical malpractice action, should likewise not be susceptible to extension as it is contained within title 2 of the Code of Civil Procedure ("Time of Commencing Actions") and inexorably impacts upon the limitations period of section 340.5. "Unknown defendants" are the only exception to section 364's notice requirements; there is no exception for good cause shown, and accordingly application of section 473 is precluded. We conclude that applying section 473 to section 340.5 through section 364 would create a "loophole" not envisioned by the Legislature.

Even were section 473 applicable, we would find that the trial court did not abuse its discretion in denying appellants the relief they sought. (*Elston* v. *City of Turlock, supra*, 38 Cal.3d 227, 233.) Under section 473, a reasonable mistake of law is excusable. (*City of Ontario* v. *Superior Court* (1970) 2 Cal.3d 335, 345 [85 Cal.Rptr. 149, 466 P.2d 693].) In order to determine whether counsel's mistake is deemed excusable, the court looks at "the reasonableness of the misconception and the justifiability of lack of determination of the correct law." (*Id.* at p. 346.)

Here, appellants' counsel's excuses are not reasonable. First, he argues that the notices to the doctors were merely mailed to an "incorrect" address. We disagree with his characterization. The record does not show that he intended the doctors to be served anywhere but at the hospital. Indeed, in the first part of his brief, he argues that under *Godwin*, service on the doctors at the hospital was proper. Moreover, his intention to serve the doctors at the hospital is manifested by his citation to a subsequent incident

---

[6]Appellants' reliance on *Simpson* v. *Williams* (1987) 192 Cal.App.3d 285 [238 Cal.Rptr. 566] is unavailing. There, the court granted section 473 relief on the basis that the statutes under which it was brought, Business and Professions Code sections 6203 and 6204, did not contain limiting language prohibiting section 473 relief. (192 Cal.App.3d at pp. 290-291.) Similarly, the holding of *McCormick* v. *Board of Supervisors, supra*, 198 Cal.App.3d 352 does not advance appellants' argument. In applying section 473, the court specifically found that there was no language limiting relief from dismissal under Public Resources Code section 21167.4.

in which the notice he served on a doctor at Cedars-Sinai was forwarded to the doctor's office.

Second, he urges that he committed an excusable mistake of law since section 364 gives no guidance regarding the method of service. Rather, he asserts, relying on *McCormick* v. *Board of Supervisors, supra*, 198 Cal.App.3d 352, 360, that section 364, subdivision (c) is permissive, in that it allows that notice "may be served in the manner prescribed in Chapter 5 (commencing with Section 1010) . . . ." Appellants' reliance on *McCormick* is unavailing. There, the court held that a citizens' group was entitled to relief under section 473 due to the unsettled state of the law regarding what constitutes sufficient compliance with a request for hearing requirement under Public Resources Code section 21167.4. (198 Cal.App.3d at p. 360) The court found it significant that a definitive case had not yet been filed and that no statutory or case law had defined "request a hearing."

On the other hand, in the present action, section 1011, referred to in section 364, subdivision (c), gave appellants the guidance which they assert they lacked. It states that "[t]he service may be personal, by delivery to the party or attorney on whom the service is required to be made, or it may be as follows: . . . (b) If upon a party, service shall be made in the manner specifically provided in particular cases, or, if no specific provision is made, service may be made by leaving the notice or other paper at the party's residence . . . ." Section 1013, subdivision (a) provides that service by mail must be mailed to the office address as last given by the person on any document filed in the cause and served on the party; otherwise at that party's place of residence. Appellants knew of both doctors' office addresses and, indeed, Mrs. Hanooka visited Pivko at his office at least six times. We also reject appellants' argument that an action had not yet been filed, and thus section 1013 cannot be applicable, since it refers to the address "as last given by the person on any document filed in the cause and served on the party."

Moreover, a close reading of section 364 belies appellants' assertion that the statute fails to give any instruction as to the method of service. Section 364, subdivision (b) makes notice to the defendant mandatory rather than permissive: it states that the notice "shall notify the defendant of the legal basis of the claim. . . ." Also, the instant case does not fit within the express exception provided for in section 364, subdivision (e), that the provisions of that section shall not be applicable to unknown defendants.

We conclude that appellants' belief that service on the doctors could be effectuated by service on the hospital had no basis in the law.[7] (See *Anderson* v. *Sherman* (1981) 125 Cal.App.3d 228, 237-238 [178 Cal.Rptr. 38] [failure to ascertain a simple and obvious point of law by elementary legal research is not an excusable mistake of law].) In light of the clarity of the above statutes, we find appellants' reliance on *City of Ontario* v. *Superior Court, supra,* 2 Cal.3d 335, 346 for the proposition that where the statute is imprecise, relief should be granted, to be misplaced. We also reject the assertion that the problem is complex and debatable, leading to relief under *Brochtrup* v. *INTEP* (1987) 190 Cal.App.3d 323, 332 [235 Cal.Rptr. 390]. Thus, we find that appellants' failure to comply with the requirements of section 364, subdivision (c) was not justifiable.

We conclude that the reasons given by appellants for their neglect are not excusable, and that, moreover, were the matter to go forward, the respondents would be prejudiced since they were prevented from participating in prelitigation settlement, the ostensible purpose of section 364. (*Elston* v. *City of Turlock, supra,* 38 Cal.3d 227, 235 [prejudice to opposing party a consideration in granting or denying § 473 motion].) Therefore, the trial court did not abuse its discretion in denying the motion for relief under section 473.

DISPOSITION

Boren, P. J., and Gates, J., concurred.

---

[7]Appellants also argue that under *Godwin*, the service on the hospital was reasonable. However, *Godwin* was published in May 1992. Since the notice was mailed on July 31, 1991, appellants could not have relied on *Godwin*.