Filed 5/12/14  Barnes v. Northeast Community Clinic CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| DANNY BARNES, | B246382 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC469988) |
| v. | |
| NORTHEAST COMMUNITY CLINIC et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Barbara Marie Scheper, Judge.  Affirmed.

Danny Barnes, in pro. per., for Plaintiff and Appellant.

Brobeck, West, Borges, Rosa & Douville, Fredrick Borges, John E. West, Curtis C. Holmes, II and Edward J. Reid, for Defendant and Respondent Northeast Community Clinic.

Carroll, Kelly, Trotter, Franzen & McKenna, Michael J. Trotter, David P. Pruett, Jo Lynn Valoff and Seth E. Workman, for Defendant and Respondent Lydia Green.

_____

Danny Barnes, representing himself, appeals from the order dismissing his medical malpractice action after the trial court sustained without leave to amend the demurrers of Dr. Lydia Green and Northeast Community Clinic on grounds including the action was barred by the one-year-from-date-of-discovery limitations provision of Code of Civil Procedure section 340.5.[1] We affirm.

## FACTUAL AND LEGAL BACKGROUND

1. *Barnes's Medical Treatment; the Notice of Intent To Sue*

According to the allegations of the initial and amended complaints and attached exhibits,[2] Barnes, born in 1961, was diagnosed with Hodgkin lymphoma in his late 20's. After removal of his spleen, chemotherapy and radiation, his cancer went into remission. Barnes suffered side effects from the treatment requiring him to take anticoagulants and have his blood tested monthly.

In 2008 Barnes began receiving medical treatment from Dr. Green at the Northeast Community Clinic. Although Barnes needed monthly blood tests, he was not permitted to see Dr. Green if he arrived as little as 10 to 15 minutes late for an appointment; if late, he often had to wait until the following month to have his blood checked.

Beginning in late 2008 Barnes began coughing continually and having chest pains. Dr. Green diagnosed Barnes with a cold and flu and prescribed various medications. After his symptoms grew worse, Dr. Green changed the medications. None was effective, and several had adverse side effects. Barnes was told he should see specialists for a variety of conditions, including boils and lesions he believed were caused by one of the medications, but he did not receive the necessary referral documents.

On September 17, 2009, after Barnes had a CT scan of his chest, Dr. Green informed him he had a history of pneumonia and the boils were a normal reaction

---

[1] Statutory references are to the Code of Civil Procedure.

[2] Barnes's pleadings, replete with run-on sentences and sentence fragments, are confusing and difficult to understand. We have attempted to summarize the allegations as accurately as possible, liberally construing the pleadings in his favor.

because Barnes had no spleen. Dr. Green prescribed medication to treat Barnes's pneumonia, but his condition did not improve. The medication was changed in December 2009 and again in January 2010. Barnes would still occasionally arrive late for appointments and be required to return the following month.

On April 19, 2010 Barnes had an ultrasound of his right breast because a mass had developed. The radiologist report stated, "There is a mass with irregular border at the 10:00 location of the right breast. Further studies including biopsy is [*sic*] recommended to exclude the possibility of malignancy." According to Barnes, who had suffered a nervous breakdown in connection with his initial cancer treatment, Dr. Green told him his cancer had reappeared, causing him shock and dismay. In May 2010 a biopsy was performed, and the mass was found to be a necrotizing granulomatous inflammation, not reappearance of Hodgkin lymphoma. By the time surgery was scheduled to remove the mass a year later, it had shrunk, obviating the need for its removal.

On June 17, 2011 Barnes faxed Northeast Community Clinic a notice of intent to sue pursuant to section 364, which requires a notice be sent to health care providers at least 90 days before a complaint is filed alleging medical malpractice.[3] An employee with Northeast Community Clinic told Barnes the notice was deficient because it failed to identify "'who did what,'" "'when they did it'" and "'what happen[ed].'" On June 20, 2011 Barnes mailed Northeast Community Clinic an amended notice of intent to sue, which it received on June 21, 2011. Although generally describing a number of grievances, including having to wait a month to see Dr. Green if he arrived late for an appointment, Barnes's amended notice specifically identified as the "legal basis of this

_____

[3]      Section 364 in part provides, "(a)  No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action.  [¶]  (b)  No particular form of notice is required, but it shall notify the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered.  [¶]  (c)  The notice may be served in the manner prescribed in Chapter 5 (commencing with Section 1010) of Title 14 of Part 2.  [¶]  (d)  If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice."

action" the negligent failure to properly diagnose pneumonia in his left lung and the mass in his chest and to properly prescribe medication. At the end of the five-page letter Barnes stated, "This notice of intent is also to be delivered to the following named individual. [¶] Cc: Dr. Lydia Green."

2. *The Pleadings*

a. *The initial complaint*

On September 20, 2011 Barnes, in propria persona, filed a complaint for medical malpractice, negligence and emotional distress. The complaint alleged Dr. Green had negligently failed to properly diagnose and treat Barnes's pneumonia resulting in scarring in his left lung, as well as to properly diagnose the mass in his breast causing him to suffer emotional distress; personnel at Northeast Community Clinic failed to allow Barnes to see Dr. Green and test his blood when he arrived late; and defendants failed to send him referrals to specialists he was told he needed to see. The complaint alleged he "continually complained" to Northeast Community Clinic and Dr. Green about the substandard medical care he was receiving during late 2009 and 2010. It further alleged he had "put defendants on notice in an attempt to resolve the matter on or about June 20, 2011."

b. *The first amended complaint*

After the trial court sustained with leave to amend Dr. Green's and Northeast Community Clinic's demurrers on the ground the facts alleged were vague and unintelligible, Barnes filed a first amended complaint asserting causes of action for negligence and emotional distress. Although more detailed than the initial complaint and attaching a number of additional exhibits, the gravamen of the first amended complaint was essentially unchanged. With respect to Barnes's discovery of the basis for his claims, the first amended complaint alleged, "On or about June 21, 2010 CT studies showed that plaintiff BARNES, was diagnosed with (Palpable mass on his right chest breast area) in which defendant GREEN MD told plaintiff that his cancer had returned and that such mass had to be remove[d] by surgical operation." Notwithstanding the CT studies were dated June 21, 2010, the first amended complaint further alleged, "On or

4

about June 20, 2010 [Barnes] discovered and hereon believe that Defendants NECC and each of them including Defendant GREEN through there [*sic*] negligence's act and omission had committed Professional negligence and/or medical malpractices against [Barnes]." Regarding notification of Dr. Green and Northeast Community Clinic of his intent to sue, the first amended complaint alleged, "On or about Monday June 20, 2010 [Barnes] received informal phone correspondence from 'Wendy' from defendants corporate office that defendants [Northeast Community Clinic] did receive fax of [Barnes's] Notice of Intent brings Civil Action sent out in the mail on June 20/2010, but that could NOT affirm that it was official formal Notice until there receive the actual NOTICE from the mail and that soon as defendant [Northeast Community Clinic] received such Notice they would Notify [Barnes]. [Barnes did] **not** receive letter of acknowledgment from defendants."[4]

Northeast Community Clinic and Dr. Green each demurred to the first amended complaint, contending the cause of action for negligence was untimely pursuant to section 340.5, which requires an action for professional negligence against a health care provider be commenced at the earlier of three years after the date of injury or one year after the plaintiff discovers or should have discovered the injury. They argued Barnes alleged he discovered Dr. Green and Northeast Community Clinic had committed malpractice on June 20, 2010 and thus was required to bring his cause of action for negligence by June 20, 2011.[5] Although timely service of a notice of intent to sue tolls the statute of limitations 90 days pursuant to section 364, subdivision (d), Dr. Green and Northeast Community Clinic argued Barnes's notice of intent to sue was not filed timely.

---

[4] Although Barnes alleges he spoke to Wendy on June 20, 2010 and the notice was sent on that date, it is clear from the record the year was 2011.

[5] They also argued other allegations in the complaint—for example, that on June 15, 2009 Barnes had complained to Northeast Community Clinic about substandard medical care—demonstrated he had discovered any injury arising from failure to refer him to a specialist or other alleged negligence well before June 20, 2010.

Northeast Community Clinic and Dr. Green also demurred on the ground the complaint was still ambiguous and unintelligible.

The trial court sustained the demurrers with leave to amend. The record on appeal does not disclose the basis for the court's ruling: The minute order does not contain an explanation, and Barnes has not provided reporter's transcripts from any hearings.

### c. *The second amended complaint*

On August 29, 2012 Barnes filed the operative second amended complaint asserting causes of action for (1) "medical/professional negligence," (2) fraudulent concealment/failure to provide medical records, (3) intentional infliction of emotional distress, and (4) "negligence/intentional infliction of emotional distress" and also adding Dr. Philip Kouros, who began treating Barnes in February 2011, as a defendant.[6] With respect to the new claims regarding his medical records, Barnes alleged he had requested copies of them on April 15, 2011, but the records he received were incomplete. The pleading further alleged defendants' fraudulent concealment of Barnes's medical records prevented him from pursuing his legal remedies at an earlier date.

As to the discovery of defendants' negligence, although his previous pleadings had alleged Barnes first discovered the malpractice on June 20, 2010, the second amended complaint alleged he did not discover it until June 21, 2010. Regarding the notice of intent to sue, the second amended complaint alleged Barnes first sent a notice on June 17, 2011. That day, however, Wendy with Northeast Community Clinic informed him the notice was insufficient because it was vague. Barnes alleged, "'**[B]oth parties mutually agreed**' that June **17/2011**: Notice of Intent would be accepted as a courtesy copy /and extension of time to commence action until the time [Barnes] amended the 'Notice of Intent' and that such amendment to add who, What, When, Where, and Doctors names . . . that such amendment was to be sent register mail with return as actual notice. . . . [Barnes] received return receipt on or about **June 21/2011**."

---

6    On September 7, 2012 Barnes filed a form amendment to the complaint (fictitious/incorrect name) naming Dr. Kouros.

6

Northeast Community Clinic and Dr. Green again demurred. Northeast Community Clinic also moved to strike the cause of action for fraudulent concealment/failure to provide medical records. On November 2, 2012 the court sustained the demurrers without leave to amend and struck the fraudulent concealment cause of action and causes of action against Dr. Kouros. The court found the second amended complaint "continues to be unintelligible in many respects" and Barnes had added the fraudulent concealment claim and Dr. Kouros as a defendant without obtaining the court's permission. The court further found the causes of action for professional negligence were time-barred and the claims for intentional and negligent infliction for emotional distress "cannot stand" because they were based entirely on the alleged professional negligence.

## DISCUSSION

1. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415; *Aubry v. Tri–City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We liberally construe the pleading with a view to substantial justice between the parties. (§ 452; *Schifando*, at p. 1081.)

Although a general demurrer does not ordinarily reach affirmative defenses, it "will lie where the complaint 'has included allegations that clearly disclose some defense or bar to recovery.'" (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 183; accord, *Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 224.) "Thus, a demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense."

7

(*Casterson*, at p. 183; accord, *Favila*, at p. 224; see *Coalition for Clean Air v. City of Visalia* (2012) 209 Cal.App.4th 408, 420 ["for a demurrer based on the statute of limitations to be sustained, the untimeliness of the lawsuit must clearly and affirmatively appear on the face of the complaint and matters judicially noticed"].)

    2. *Barnes's Professional Negligence Claim Is Time-barred*

        a. *Governing law*

Section 340.5, part of the Medical Injury Compensation Reform Act of 1975 (MICRA), provides, in part, "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." "It is well established that, '"[t]he term 'injury,' as used in section 340.5, means both a person's physical condition and its negligent cause."' [Citation.] However, a person need not *know* of the actual negligent cause of an injury; mere *suspicion* of negligence suffices to trigger the limitation period." (*Knowles v. Superior Court* (2004) 118 Cal.App.4th 1290, 1295.)

A potential medical malpractice plaintiff must notify health care providers of his or her intent to sue at least 90 days before filing a complaint. (§ 364, subd. (a); *Castenada v. Department of Corrections & Rehabilitation* (2013) 212 Cal.App.4th 1051, 1068.) The purpose of section 364, also enacted as part of MICRA, "is to decrease the number of medical malpractice actions filed by establishing a procedure that encourages the parties to negotiate 'outside the structure and atmosphere of the formal litigation process.'" (*Woods v. Young* (1991) 53 Cal.3d 315, 320 (*Woods*).) Section 364, subdivision (d), provides, "If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice." Notwithstanding section 364, subdivision (d), states the time for filing shall be "extended," the *Woods* Court held the legislative purpose of section 364, subdivision (d), is "best effectuated by construing section 364(d) as tolling the one-year statute of limitations when section 364(a)'s ninety-

8

day notice of intent to sue is served during, but not before, the last ninety days of the one-year limitations period. Because the statute of limitations is tolled for 90 days and not merely extended by 90 days from the date of service of the notice, this construction results in period of 1 year and 90 days in which to file the lawsuit." (*Woods*, at p. 325.)

        b. *Barnes filed the initial complaint one day late*

Liberally construing the second amended complaint, the negligence Barnes alleged falls into three general categories: (1) misdiagnosing pneumonia in his left lung as a cold and flu until September 17, 2009 and failing to properly treat it; (2) failing to properly monitor his blood levels, including refusing to allow him to see Dr. Green if he arrived late for an appointment beginning in 2008; and (3) misdiagnosing the mass in his breast as cancer, which he discovered on either June 20 or June 21, 2010. Notwithstanding the second amended complaint alleged Barnes had knowledge of the first two categories of purported negligence at least one year before June 2010, even giving Barnes the benefit of the doubt that June 21, 2010 was the date of discovery of all the categories of professional negligence, the last day on which Barnes could have timely filed a complaint asserting those claims absent any tolling of the limitations period was June 21, 2011.

Barnes, however, timely filed a notice of intent to sue within 90 days of the one-year limitations period.[7] Thus, Barnes had a period of one year and 90 days from June 21, 2010 in which to file his lawsuit—that is, until September 19, 2011. (See *Woods*, *supra*, 53 Cal.3d at p. 325.) Barnes filed his lawsuit on September 20, 2011, missing the deadline by one day. Although it may seem harsh to bar his lawsuit because of a one-day miscalculation, as Barnes complains, strict enforcement of the statute of limitations is "'the "price of the orderly and timely processing of litigation"' [citation]—a price that may be high, but one that must nevertheless be paid.'" (*Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 499; *see Hanooka v. Pivko* (1994) 22 Cal.App.4th 1553, 1561 (*Hanooka*) ["[s]tatutes of limitations are generally

---

7    The analysis is the same whether we consider the June 17, 2010 or the June 20, 2010 notice of intent to sue the operative notice. (See *Woods*, *supra*, 53 Cal.3d at p. 325.)

9

regarded as inflexible, and are ""upheld and enforced regardless of personal hardship"""].)

Barnes attempts to salvage his lawsuit by insisting he and "Wendy" at Northeast Community Clinic agreed the 90-day tolling period would not begin until June 21, 2011 when Northeast Community Clinic received the amended notice of intent to sue by certified mail and arguing the time he had to serve his complaint should be extended by five days, as specified in section 1013, subdivision (a), pursuant to section 364, subdivision (c), which provides the notice of intent to sue may be served in accordance with section 1010 et seq. generally governing notice and service.

Barnes's arguments are without merit. First, section 1013, subdivision (a), addressing service by mail, states, "[s]ervice is complete at the time of the deposit," not receipt, and section 364, subdivision (d), states the limitations period shall be extended from the "service of the notice." (See *Silver v. McNamee* (1999) 69 Cal.App.4th 269, 276 [notice of intent to sue "effective immediately upon deposit in the mail"].) Although section 1013, subdivision (a), extends by five days the time within which a party served by mail must respond or "any right or duty to do any act" (§ 1013, subd. (a)), "[i]t is reasonably well settled that section 1013 does not extend the statutes of limitations." (*Tielsch v. City of Anaheim* (1984) 160 Cal.App.3d 576, 578; accord, *Silver*, at p. 282, fn. 16].) Second, any purported agreement with Wendy to extend the statute of limitations to June 21, 2011 or to begin the 90-day tolling period on that date, even if authorized, would be of no consequence. Assuming as we have Barnes did not discover the medical malpractice until June 21, 2010, the last day of the limitations period would be June 21, 2011 in any event, and 90 days from that date was September 19, 2011.[8] The lawsuit was one day late.

---

[8] Northeast Community argues Barnes's complaint would have been untimely even if the notice of intent were deemed served on June 21, 2011. Dicta in *Woods*, *supra*, 53 Cal.3d at page 326, footnote 3 suggests this is incorrect: "A plaintiff who serves the notice of intent to sue on the last day of the limitations period has one day after the ninety-day waiting period to file the complaint."

10

Barnes also argues Northeast Community Clinic and Dr. Green should be estopped from raising the statute of limitations because they intentionally concealed his medical records.[9] "'"Equitable estoppel . . . comes into play only after the limitations period has run and addresses . . . the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period. [Equitable estoppel] is wholly independent of the limitations period itself and takes its life . . . from the equitable principle that no man [may] profit from his own wrongdoing in a court of justice."'" (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 383.)

Barnes has not alleged facts supporting equitable estoppel. The gist of Barnes's allegations is that the limitations period should be tolled because the intentional concealment of his medical records prevented him from discovering his injuries at an earlier date, not that he was induced into forbearing suit. (See *Lantzy v. Centex Homes*, *supra*, 31 Cal.4th at p. 383 ["'"[t]olling, strictly speaking, is concerned with the point at which the limitations period begins to run and with the circumstances in which the running of the limitations period may be suspended"'"].) Tolling based on intentional concealment, however, only applies to the three-year limitations period in section 340.5, not the one-year discovery provision. (See *Belton v. Bowers Ambulance Service* (1999) 20 Cal.4th 928, 934 ["We see no reason to apply the second sentence of section 340.5 to the one-year period it does not mention, in addition to the three-year period it does mention. The general purpose of MICRA does not require us to expand that sentence beyond its language."]; *Hanooka*, *supra*, 22 Cal.App.4th at p. 1563 ["section 340.5 prohibits tolling beyond the three-year period except in particular circumstances, and no tolling is provided at all for the one-year period following discovery"].) The second amended complaint clearly alleges facts demonstrating the one-year discovery provision is applicable: Barnes learned he had pneumonia, not a cold or flu, in September 2009 and

---

9    Barnes does not challenge the trial court's ruling striking his cause of action for fraudulent concealment/failure to provide his medical records.

necrotizing granulomatous inflammation, not cancer, no later than June 21, 2010. Additionally, long before June 2010 Barnes had been complaining about the failure to promptly reschedule appointments to which he arrived late and failure to receive specialist referrals. All of Barnes's alleged injuries and damages flow from those predicates.

### c. *Barnes is not entitled to relief from mistake under section 473*

Barnes argues for the first time on appeal, if he erred in filing his complaint one day late, he is entitled to relief from his mistake pursuant to section 473. Under section 473, subdivision (b), a trial court has discretion to relieve a party from the dismissal of his or her lawsuit or the entry of default caused by the party's own mistake, inadvertence, surprise or excusable neglect. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981; cf. *Esther B. v. City of Los Angeles* (2008) 158 Cal.App.4th 1093, 1100 [mandatory relief provision of § 473, subd. (b), applies only to an attorney representing a party; purpose of the mandatory relief provision is to relieve the innocent client of the burden of the attorney's fault].)

Barnes's argument is without merit even if not forfeited for failure to raise it in the trial court. (See *Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 [issues not raised in trial court cannot be raised for the first time on appeal]; accord, *Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1314.) Section 473 does not provide "a loophole through which a plaintiff may escape the bar of the statute of limitations." (*Castro v. Sacramento County Fire Protection Dist.* (1996) 47 Cal.App.4th 927, 933.) "Notwithstanding the broad construction afforded section 473, subdivision (b), the statute does not offer relief from mandatory deadlines deemed jurisdictional in nature. [Citations.] Thus section 473, subdivision (b) cannot extend the time in which a party must move for a new trial, since this time limit is considered jurisdictional. [Citations.] Nor does section 473, subdivision (b) generally apply to dismissals attributable to a party's failure to comply with the applicable limitations period in which to institute an action, whether by complaint [citations] or by writ petition

12

[citation]." (*Maynard v. Brandon* (2005) 36 Cal.4th 364, 373; accord, *Jackson v. Doe* (2011) 192 Cal.App.4th 742, 755.)

Although some limitations statutes expressly provide "for an extension of the limitation period on a showing of good cause, which has been interpreted as equivalent to a showing under section 473" (*Hanooka*, *supra*, 22 Cal.App.4th at p. 1561), the one-year discovery limitation in section 340.5 does not provide for relief either generally on grounds of excusable neglect or specifically under section 473, subdivision (b). (*Hanooka*, at p. 1562.) Thus, a plaintiff "cannot extend the medical malpractice statute of limitations, section 340.5, by applying section 473 to the notice provision of section 364." (*Id.* at p. 1563.)

3. *Barnes Failed To Allege Facts Sufficient To State a Cause of Action for Intentional Infliction of Emotional Distress*

"'The elements of a prima facie case of intentional infliction of emotional distress consist of: (1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) suffering of severe or extreme emotional distress by the plaintiff; and (3) the plaintiff's emotional distress is actually and proximately the result of defendant's outrageous conduct.'" (*Chang v. Lederman* (2009) 172 Cal.App.4th 67, 86.) "'"[I]t is for the court to determine, in the first instance, whether the defendant's conduct my reasonably be regarded as so extreme and outrageous as to permit recovery."'" (*Fowler v. Varian Associates, Inc.* (1987) 196 Cal.App.3d 34, 44.)

As the trial court found, Barnes's claim for intentional infliction of emotional distress is predicated entirely on his allegations that Northeast Community Clinic's and Dr. Green's treatment fell below the standard of care.[10] There are no substantive

_____

[10] In addition to intentional infliction of emotional distress, Barnes asserted a cause of action for "negligence/intentional infliction of emotional distress." To the extent Barnes was attempting to assert a claim for negligent infliction of emotional distress, it is superfluous. "California does not recognize an independent tort for the negligent infliction of emotional distress. Instead, recovery of emotional distress damages is premised on defendant's negligence (i.e., breach of a duty) that proximately causes

13

allegations of intentional misconduct, let alone extreme and outrageous intentional misconduct. (See *Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 210 [intentional infliction of emotional distress "calls for intentional, or at least reckless conduct—conduct intended to inflict injury or engaged in with the realization that injury will result"; officers' failure to timely act to prevent an assault by an assailant under surveillance, absent intent to injure "is not the kind of 'extreme and outrageous conduct' that gives rise to liability under the 'intentional infliction of emotional distress tort"].) Simply including the words "deceit" and "willful conduct" as part of boilerplate allegations is not enough. (See *Brousseau v. Jarrett* (1977) 73 Cal.App.3d 864, 872 [in medical malpractice action "second count's conclusory characterization of defendant's conduct as intentional, willful and fraudulent is a patently insufficient statement of 'oppression, fraud, or malice, express or implied'" required for recovery of punitive damages]; *Allen v. Jones* (1980) 104 Cal.App.3d 207, 215 [plaintiff's allegations of deceit and outrageous conduct "too vague and conclusory; it is evident that the true and sole basis of plaintiff's action is negligent breach of an agreement"].) Based on the facts Barnes has alleged in three pleadings, he cannot state a cause of action for intentional infliction of emotional distress.

## DISPOSITION

The order of dismissal is affirmed. Dr. Green and Northeast Community Clinic are to recover their costs on appeal.


PERLUSS, P. J.

We concur:

WOODS, J.                    SEGAL, J.[*]

_____

emotional distress." (*Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1520; accord, *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 984 ["there is no independent tort of negligent infliction of emotional distress"].)

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.