[No. B096230. Second Dist., Div. Four. July 24, 1997.]

ZAROUG SONDRA DERDERIAN et al., Plaintiffs and Appellants, v. WILLIAM DIETRICK, Defendant and Respondent.

## Counsel

George McDonald and Keith N. Crouch for Plaintiffs and Appellants.

Bonne, Bridges, Mueller, O'Keefe & Nichols, Raymond J. McMahon, Carmen Vigil and Peter R. Osinoff for Defendant and Respondent.

## OPINION

## VOGEL (C. S.), P. J.—

### INTRODUCTION

Plaintiffs and appellants Zaroug Sondra Derderian, Marilyn Mayda Derderian, Sophia Derderian-Assadourian, and Asdghhig S. Derderian appeal from summary judgment granted in favor of defendant and respondent, William Dietrick, M.D., in their action for the alleged wrongful death of their mother, Mary Derderian. The trial court concluded that summary judgment was proper because the statute of limitations for appellants to bring their professional negligence claim (Code Civ. Proc., § 340.5) was not tolled since appellants failed to provide respondent with actual notice of their claim as required by Code of Civil Procedure section 364,[1] and therefore the statute of limitations for filing the action expired three months before the complaint was served and filed. We find based on the undisputed facts that appellants failed to comply with the requirements of section 364 and thus, the applicable one-year statute of limitations was not tolled and expired before their action was filed. Summary judgment was properly granted in favor of respondent.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 5, 1992, appellants' mother, Mary Derderian, was brought into the emergency department of St. Luke Medical Center in Pasadena. Respondent was the physician who initially treated her. Appellant Zaroug Derderian met respondent that day and was aware of his name and the fact he treated her mother. Appellant's mother was admitted to the hospital for observation later that day, and her care was turned over to another physician at that time.

On October 10, 1992, appellants' mother died while still at St. Luke Medical Center. As of that date, appellant Zaroug Derderian believed that respondent's treatment of her mother had been negligent and contributed to her death.

On October 5, 1993, appellants sent letters to various health care providers for the purpose of notifying them of appellants' intent to file suit for the

---

[1]All further statutory references are to the Code of Civil Procedure.

wrongful death of their mother. One letter was sent to St. Luke Medical Center on East Washington Boulevard in Pasadena; the address was obtained from the patient's medical records. Appellants had received from the decedent's cardiologist, Dr. Matthew Baggett, notice that he had relocated his office. Appellants sent a letter to both his new address and his former address.

Appellants sent respondent's letter addressed to "Dr. William Dietrick, M.D.[,] c/o St. Luke Emergency Associates[,] P.O. Box 2267[,] Chatsworth, CA 91313-2267." They obtained this address from a bill sent to their mother's address. The bill indicated it was from "St. Luke Emergency Associates," at the Chatsworth address listed above, and instructed "Make check payable to: St. Luke Emergency Associates." At the lower right hand corner of the bill, respondent's name appeared in a box indicating "physician performing service." The place of service was listed as "St. Luke Medical Center Emergency Department Pasadena." The bill indicated that partial payment had been received from an insurance carrier. Appellants' attorney had looked at Marquis' Directory for emergency room physicians and the "Yellow Pages of the Pacific telephone book," and did not find a listing for respondent.

On January 3, 1994, appellants filed a complaint for wrongful death by professional negligence. Named as defendants were respondent, St. Luke Emergency Associates, St. Luke Medical Center, and Matthew A. Baggett, M.D.[2] Respondent was served with a summons and complaint at his home address in San Marino. Attached was a copy of the letter dated October 5, 1993, regarding appellants' intent to sue respondent and others. Respondent had never received this letter until he received the summons and complaint.

The address to which the letter had been sent was for a billing service, Synergistic Systems, Inc., used by J.C. Bufalino, M.D., Inc., doing business as St. Luke Emergency Associates, for whom respondent had been working as an independent contractor at the time he treated appellants' mother.[3] The supervisor of the St. Luke Emergency Associates account employed by the billing service stated in a declaration that the billing service never received the letter regarding respondent. If the service had received it, a notation would have been made in the account regarding receipt of the letter and Dr. Bufalino would have been informed. She found no notation to that effect in the St. Luke Emergency Associates account.

Respondent filed an answer to appellants' complaint on March 22, 1994, pleading as an affirmative defense that the action was barred by the statute

[2]None of the other defendants are parties to this appeal.
[3]Respondent was paid an hourly rate by J.C. Bufalino, M.D., Inc., for his time working in the St. Luke Emergency Department.

of limitations. Appellants filed a first amended complaint on February 8, 1995, adding J.C. Bufalino, M.D., Inc., doing business as St. Luke Emergency Associates, as a defendant. Respondent filed an answer to the first amended complaint on March 10, 1995, again pleading as an affirmative defense that the action was barred by the statute of limitations.

Respondent filed a motion for summary judgment on April 19, 1995, arguing that appellants failed to serve him with notice of their intent to sue pursuant to section 364, that the one-year statute of limitations was not tolled, and the complaint was filed after the limitations period had expired. Specifically, respondent set forth as undisputed facts that the decedent was treated at St. Luke Medical Center between October 5 and October 10, 1992, at which time she passed away. Appellants were aware of respondent's identity as of October 5, 1992, and by October 10, 1992, they believed respondent negligently caused decedent's death. Appellants claim they mailed the section 364 notice letter to respondent in care of St. Luke Emergency Associates, P.O. Box 2267, Chatsworth, CA 91313. That address was never used by respondent as a business address, nor was it ever listed as his professional address with the California Medical Board.[4] The address is maintained by Synergistic Systems, Inc., the accounts receivable management agency for J.C. Bufalino, M.D., Inc., doing business as St. Luke Emergency Associates. Respondent did not receive a copy of the section 364 notice until he received a copy of the summons and complaint on January 3, 1994, three months after the one-year statute of limitations had expired. Respondent did not learn of decedent's death until he received a copy of the summons and complaint. Appellants filed their complaint on January 3, 1995, one year and three months after the one-year statute of limitations had commenced.

Appellants filed opposition to the motion for summary judgment, maintaining that they had complied with the requirements of section 364. They also filed a separate statement of disputed and undisputed material facts, in which they asserted that they undertook a search for respondent's address before concluding that the address ultimately used would provide direct access to respondent for service of the section 364 letter.

Respondent thereafter filed a reply to the opposition. He also filed a declaration attesting that the bill sent to decedent's address was not sent by him, he did not participate in its creation in any way, he did not receive any

---

[4]In his declaration in support of the motion for summary judgment, respondent declared that he never used the Chatsworth post office box address as a business or mailing address, and had never authorized St. Luke Emergency Associates or J.C. Bufalino, M.D., Inc., to accept service on his behalf.

money from payment of the bill, and it was not his professional statement. He was paid strictly on an hourly basis, regardless of what services he performed. He further stated that his home address was easily obtainable from both the California Medical Board and the Los Angeles County Medical Directory.

Hearing on the motion for summary judgment was held on May 19, 1995, at which time the trial court granted summary judgment in favor of respondent. Summary judgment was entered on June 15, 1995, followed by notice of entry of judgment filed July 3, 1995. Appellants timely filed their notice of appeal from the judgment on August 24, 1995.

## DISCUSSION

■ "[S]ummary judgment is granted if all the submitted papers show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (§ 437c, subd. (c).) A defendant seeking summary judgment has met the burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action cannot be established. (§ 437c, subd. (n)(2); [citation].) Once the defendant's burden is met, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action. [Citation.] In reviewing the propriety of a summary judgment, the appellate court independently reviews the record that was before the trial court. [Citation.] We must determine whether the facts as shown by the parties give rise to a triable issue of material fact. [Citation.] In making this determination, the moving party's affidavits are strictly construed while those of the opposing party are liberally construed. [Citation.]" (*Hanooka* v. *Pivko* (1994) 22 Cal.App.4th 1553, 1558 [28 Cal.Rptr.2d 70].)

Section 364, subdivision (a), provides that "No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action." Subdivision (b) provides that "No particular form of notice is required, but it shall notify the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered."[5] Subdivision (d) states that "If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice."

■ In *Woods* v. *Young* (1991) 53 Cal.3d 315, 328 [279 Cal.Rptr. 613, 807 P.2d 455], the Supreme Court determined that when the 90-day notice of

---

[5]Section 364, subdivision (c) states that "The notice may be served in the manner prescribed in Chapter 5 (commencing with Section 1010) of Title 14 of Part 2."

intent to sue is served in the last 90 days of the one-year statute of limitations, section 340.5 is tolled for 90 days.[6] Further, the court declared that the purpose of the 90-day notice requirement is to encourage negotiation and settlement outside the formal litigation process. (53 Cal.3d at p. 320.)

 Respondent cites the case of *Hanooka* v. *Pivko, supra,* 22 Cal.App.4th 1553, in support of his argument that appellants failed to comply with the requirements of section 364. In *Hanooka,* plaintiffs brought an action against two physicians for the wrongful death of plaintiffs' child. Defendant Dr. Menkes had examined the child at the University of California at Los Angeles Medical Center. Defendant Dr. Pivko examined the child at his private office, in the company of the plaintiff mother. The child was hospitalized at Cedars-Sinai Medical Center where both Pivko and Menkes had staff privileges. Thereafter, he was seen on five occasions at Pivko's office before being readmitted to Cedars-Sinai. He died three weeks later, on September 27, 1990. On July 31, 1991, plaintiffs mailed a notice of intent to sue addressed to the Cedars-Sinai medical records department, indicating their intent to commence an action against Pivko and Menkes, among others. Plaintiffs filed their complaint on October 17, 1991.

Defendants filed a motion for summary judgment, arguing that the doctors had not received actual notice of intent to sue when the notice letters were sent to the hospital at which they maintained staff privileges, that the statute of limitations had not been tolled, and that the complaint was untimely. Plaintiffs contended that service of notice on the hospital was sufficient to comply with section 364. However, the appellate court upheld the trial court's entry of summary judgment, noting that "[a]dopting appellants' position would run counter to the purposes of giving a health care provider notice of the imminence of suit and promoting prelitigation settlement, which can only be effectuated if the health care provider has actual notice." (22 Cal.App.4th at p. 1559, citing *Godwin* v. *City of Bellflower* (1992) 5 Cal.App.4th 1625, 1631 [7 Cal.Rptr.2d 524].) The court continued: "We conclude that where respondent doctors did not receive actual notice pursuant to section 364, subdivision (a), appellants cannot take advantage of the 90-day extension period provided by section 364, subdivision (d). Furthermore, we hold that a plaintiff cannot rely on a hospital to forward section 364, subdivision (a) notices to individual physicians where, as here, the plaintiff has knowledge of the identity and location of the physicians." (*Hanooka* v. *Pivko, supra,* 22 Cal.App.4th at p. 1560.)

---

[6]There is no dispute that the applicable statute of limitations in this case is the one-year period, which commenced once the appellants discovered the injury. (§ 340.5.)

Appellants argue in the present appeal that *Hanooka* is distinguishable because here, they did not send the letter designed to notify respondent of their intent to sue to a hospital, hoping that the letter would be forwarded. Instead, they sent the letter to an address which, based on the information at hand, to wit, the bill from St. Luke Emergency Associates, they intended would reach respondent directly. While we agree that appellants' intent was apparently different from the intent of the plaintiffs in *Hanooka* to rely on a third party to forward the notice letter to the physicians, we hold that appellants nonetheless failed to comply with the requirements of section 364, as that section has been interpreted in cases such as *Hanooka*.

The notice of intent to commence a medical malpractice action is not a mere formality. Rather, the Legislature intended that it serve as a means of ensuring that health care providers and potential plaintiffs have the opportunity to engage in prelitigation settlement discussions. Obviously this can occur only when the health care provider receives actual notice from the potential plaintiff. Clearly the burden of taking adequate steps likely to accomplish actual notice must fall on the potential plaintiff.[7]

Under the circumstances present here, it was not sufficient for appellants to send the section 364 notice letter to the address listed on the bill they possessed. From the face of the bill, appellants could not have gleaned adequate assurance that the Chatsworth post office box address of St. Luke Emergency Associates, from whom the bill was received, had any direct connection with respondent. Appellants' counsel stated that, "In looking at Dr. Dietrick's bill it appeared that he was associated with the St. Luke Emergency Associates. It was to that address, apparently, that Dr. Dietrick expected moneys owing to him for his services in [*sic*] October 5, 1992 to be sent." However, appellants' counsel was not justified in *assuming* that the bill was "Dr. Dietrick's bill" and that "Dr. Dietrick expected moneys owing to him" to be sent to him at that address. The bill clearly stated it was from St. Luke Emergency Associates, not from respondent, and requested that checks be made payable to St. Luke Emergency Associates, not to respondent.[8] There is no significant difference between appellants' sending the billing statement to St. Luke Emergency Associates and the Hanookas'

---

[7]We do not hold, and need not address, the issue of whether section 364 requires that the health care provider receive actual notice in every case. Instead, under the circumstances present here, we hold that appellants did not take adequate steps which would be likely to result in actual notice to respondent.

[8]Appellants' counsel stated that, in his experience, "often emergency rooms are run by independent contractors of the hospitals in which they exist." This knowledge also should have caused him to question respondent's actual relationship with St. Luke Emergency Associates and whether respondent could be reached directly at that address.

directing notice to the hospital where the defendant doctors enjoyed staff privileges.

In a medical malpractice action against a physician, there is a relatively simple and direct way to comply with the prefiling notice. Civil Code section 1798.61, subdivision (a) of the Information Practices Act provides: "Nothing in this chapter shall prohibit the release of only names and addresses of persons possessing licenses to engage in professional occupations . . . ." California Code of Regulations, title 16, section 1303 provides: "Each person holding a certificate, license, permit or any other authority issued under the Medical Practice Act shall file his or her proper and current mailing address with the division in its principal office, and shall immediately notify the division at its office of any and all changes of mailing address, giving both the old and new address." There is no reasonable explanation as to why the appellants did not avail themselves of the public records which assured notice of their malpractice claim would actually be sent to and received by respondent. If appellants had given notice to respondent at the address he is required to file with the Medical Board of California, he could hardly claim he did not receive actual notice. (See *Baughman* v. *Medical Board* (1995) 40 Cal.App.4th 398, 402 [46 Cal.Rptr.2d 498].)

Although we have concluded that appellants' efforts to comply with section 364 were deficient, we have not concluded that resorting to public records is essential to fulfill the requirement for prefiling notice. For example, a relatively current written communication from a physician to a patient bearing a letterhead showing an address should suffice as an accurate indication of where notice may be directed. Also, a patient's firsthand knowledge based on visits to the physician's office, current listings and advertisement in professional and telephone directories and available on-line legal and medical research providers are all generally reliable sources for determining where section 364 notice may be directed. Any doubt about those or other sources may be resolved by resorting to the public record of the Medical Board of California, Division of Medical Quality where physicians' current addresses are maintained in accordance with the law regulating medical doctors.

As a consequence of appellants' failure to effectively comply with section 364, the statute of limitations for bringing their action was not tolled and the action is time-barred. Respondent was thus entitled to summary judgment in his favor.

## DISPOSITION

The judgment is affirmed.

Hastings, J., and Aranda, J.,* concurred.

A petition for a rehearing was denied August 20, 1997, and appellants' petition for review by the Supreme Court was denied October 15, 1997. Mosk, J., was of the opinion that the petition should be granted.

---

*Judge of the Municipal Court for the South Bay Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.