[No. D030531. Fourth Dist., Div. One. Jan. 14, 1999.]

WALLACE SILVER, Plaintiff and Appellant, v.
LAWRENCE McNAMEE, Defendant and Respondent.

**COUNSEL**

Janice F. Mulligan for Plaintiff and Appellant.

Dummit, Faber & Briegleb, Bruce S. Bailey and Janet M. Lingel for Defendant and Respondent.

## OPINION

**KREMER, P. J.**—Plaintiff Wallace Silver appeals a summary judgment favoring defendant Lawrence McNamee on Silver's complaint for medical malpractice. Silver contends the superior court erred in concluding this lawsuit was time barred as a matter of law. We reverse the judgment.

I

### INTRODUCTION

The parties dispute whether Silver timely served McNamee with notice of intent to sue (Code Civ. Proc.,[1] § 364)[2] so as to toll for 90 days the 1-year limitations period of section 340.5. Resolution of this case involves analysis of the interplay among subdivisions (a) and (d) of section 364 and subdivision (a) of section 1013. Section 364, subdivision (a) deals with the amount of notice to which McNamee was entitled before Silver filed this lawsuit. Section 364, subdivision (d) provides for tolling of the statute of limitations when the notice of intent to sue is served within 90 days of the expiration of such limitations statute. Section 1013, subdivision (a) governs service by mail.

On January 8, 1997, three days before the limitations period was set to expire on his claim against McNamee for medical malpractice, Silver mailed to McNamee's Ohio residence two section 364 notices of intent to sue, one by regular mail and the other by certified mail. On March 21, 1997, Silver filed this lawsuit against McNamee.

McNamee sought summary judgment on the ground this lawsuit was time-barred since McNamee assertedly did not receive "actual notice" of Silver's

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] Section 364 provides in relevant part:

"(a) No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action.

"(b) No particular form of notice is required, but it shall notify the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered.

"(c) The notice may be served in the manner prescribed in Chapter 5 (commencing with Section 1010) of Title 14 of Part 2.

"(d) If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice."

intent to sue until March 1997, almost two months after expiration of section 340.5's one-year limitations period. McNamee claimed that in February 1997 he declined to accept the certified mail from Silver and in March 1997 he first received the section 364 notice sent by regular mail.

In granting summary judgment favoring McNamee, the superior court determined section 340.5's one-year statute of limitations expired before McNamee had "actual notice" of Silver's intent to sue and thus such limitations statute was not tolled for ninety days under subdivision (d) of section 364. The court also determined the effective date of the notices mailed by Silver on January 8, 1997, was delayed by 10 days under section 1013, subdivision (a)'s provisions governing service by mail outside California and thus—by not becoming effective until January 18, 1997, after expiration of section 340.5's limitations period—such notices were untimely for purposes of tolling the statute of limitations for 90 days under section 364, subdivision (d).

Concluding Silver's notices of intent to sue McNamee were effective immediately upon their deposit in the mail, we determine the superior court erred in construing section 1013, subdivision (a) as delaying the effective date of such notices by 10 days. Further, in light of evidence indicating Silver strictly complied with relevant statutes governing service by mail, we also determine the superior court erred in concluding subdivision (d) of section 364 could not apply to toll the statute of limitations unless and until McNamee had "actual notice" of Silver's intent to sue. Hence, we reverse the summary judgment.

II

FACTS

For purposes of determining the propriety of the summary judgment favoring McNamee, we state the facts undisputed by the parties. We state other facts in the light most favorable to Silver as appellant.

In January 1992 McNamee read Silver's lumbar "MRI" without noting Silver's aortic aneurysm.

On January 10, 1996, Silver suffered acute pain in his lower extremities.

On January 11, 1996, Silver went to an emergency room where he was diagnosed with an abdominal aortic aneurysm.[3]

On January 12, 1996, Silver underwent a procedure where the aneurysm was resected.

On January 14, 1996, Silver underwent a fasciotomy procedure to alleviate the pressure to his lower calves caused by the resulting blood clot in his aneurysm.

On January 31, 1996, after Silver developed gangrene of his lower extremities, a bilateral below-knee amputation was performed.

### III

### SILVER'S NOTICE OF INTENT TO COMMENCE ACTION AGAINST MCNAMEE

On January 8, 1997, three days before the one-year limitations period was to expire on his claim against McNamee for medical malpractice, Silver retained counsel Mulligan. On that date, Mulligan's office sent by regular first class United States mail to McNamee in Ohio a notice of Silver's intent to commence a professional negligence action. (§ 364, subd. (a).) The notice was properly addressed to McNamee, bore the correct amount of prepaid postage, and was placed in the United States mail. On that date, Mulligan's paralegal also executed a declaration of mailing such notice. The notice sent by regular mail was never returned by the post office to Mulligan.

Also on January 8, 1997, Mulligan's office sent by certified mail to McNamee in Ohio a second notice of intent to commence a professional negligence action. The second notice was properly addressed to McNamee, bore the correct amount of prepaid postage, and was placed in the United States mail.

On January 10, January 22, and January 28, 1997, the post office attempted to deliver to McNamee the notice sent by certified mail. The post office returned the certified mail to Mulligan as unclaimed.

---

[3]For purposes of this appeal, the parties agree section 340.5's one-year statute of limitations commenced running on January 11, 1996, and, unless tolled, would have expired on January 11, 1997.

## IV

### Superior Court Proceedings

On March 21, 1997, Silver filed this medical malpractice lawsuit against McNamee. Silver alleged he lost his legs as a result of McNamee's failure to diagnose an aortic aneurysm when reading Silver's lumbar MRI.

In July 1997, answering Silver's complaint, McNamee affirmatively alleged this lawsuit was time-barred under section 340.5.

In December 1997 McNamee filed a motion for summary judgment on the ground Silver's lawsuit was barred under section 340.5's one-year statute of limitations. McNamee asserted that not until March 1997, almost two months after expiration of the one-year limitations period, did he receive "actual notice" of Silver's intent to commence this professional negligence lawsuit against him.[4]

Opposing McNamee's summary judgment motion, Silver asserted his lawsuit was timely filed since the notices sent on January 8, 1997, by first class mail and certified mail to McNamee at his Ohio residence satisfied the requirements of section 364 and thus tolled for 90 days the statute of limitations governing this action.[5]

In January 1998 by telephonic ruling, the superior court granted McNamee's motion for summary judgment. The court concluded section 340.5's one-year limitations period expired before "actual notice" to McNamee of Silver's intent to sue and thus the statute of limitations was not tolled for ninety days.

---

[4]Supporting his motion for summary judgment, McNamee submitted his and his wife's declarations asserting: In mid-February 1997 McNamee received from the post office a notice of attempted but unsuccessful delivery of a "registered" letter from Mulligan's office; three such attempts were made at delivery, the first two when McNamee was not home and the third when McNamee declined to sign for the letter since he did not know Mulligan and was not expecting any "registered" mail from anyone in San Diego; on March 7 or 8, 1997, McNamee received a letter from Mulligan's office mailed first class to McNamee's Ohio home; such letter included the notice of Silver's intent to commence a professional negligence action; on March 10, 1997, by telephone call to his insurance broker, McNamee said he had received Silver's notice of intent to commence a professional negligence action and would fax such notice to the broker; and on that day McNamee sent the notice to his broker by facsimile.

[5]In opposition to McNamee's summary judgment motion, Silver submitted the declaration of his counsel Mulligan and her paralegal asserting that on January 8, 1997, the two notices of Silver's intent to commence a professional negligence action were sent to McNamee's home in Ohio, one by first class mail and the other by certified mail; the notice sent by first class mail was not returned by the post office to Mulligan's office; and the notice sent by certified mail was returned by the post office as unclaimed.

In February 1998 after hearing, the superior court reaffirmed its ruling granting summary judgment favoring McNamee. The court concluded section 364, subdivision (b) did "not require any particular form" of notice; section 364, subdivision (c) permitted service of the notice in the manner prescribed in section 1010 et seq.; since Silver served McNamee on January 8, 1997, by mail at an address outside California, an extension of 10 days was required by section 1013, subdivision (a); cases arising under section 1013, subdivision (a) involving notice "tack the time on the beginning"; cases cited by Silver were distinguishable as extending "time to respond"; and thus "[t]he only timely notice in this case would have been by personal service or Express Mail service."

In March 1998 the superior court entered summary judgment dismissing Silver's lawsuit against McNamee.

Silver appeals the summary judgment favoring McNamee.

## V

### DISCUSSION

 Silver contends the superior court erred in granting summary judgment on statute of limitations grounds. Asserting he successfully served McNamee on January 8, 1997, with section 364 notices before expiration of section 340.5's one-year limitations period so as to toll the statute of limitations for ninety days under subdivision (d) of section 364, Silver contends this lawsuit was filed timely on March 21, 1997. Specifically, Silver asserts the section 364 notices served on McNamee were effective immediately upon deposit in the mail. Silver also asserts that where, as here, a plaintiff strictly complies with relevant statutes governing service by mail, neither section 364 nor case law requires the plaintiff to give the health care provider "actual notice" of the plaintiff's intent to sue.

### A

*Supreme Court Construction of Section 364*

In *Woods* v. *Young* (1991) 53 Cal.3d 315 [279 Cal.Rptr. 613, 807 P.2d 455], a decision construing section 364, the Supreme Court held section 340.5's "1-year statute of limitations is tolled for 90 days when the plaintiff gives the notice of intent to sue in the last 90 days of the limitations period . . . ." (*Woods* v. *Young, supra,* at p. 319.) The Supreme Court later applied the same tolling rule to section 340.5's three-year statute of limitations.

(*Russell* v. *Stanford University Hospital* (1997) 15 Cal.4th 783 [64 Cal.Rptr.2d 97, 937 P.2d 640].)

In *Woods* v. *Young, supra,* 53 Cal.3d 315, the Supreme Court observed that subdivision (a) of section 364 "requires that, before filing a medical malpractice action, a plaintiff give the defendant at least 90 days' notice of intent to sue. The purpose of this 90-day waiting period is to decrease the number of medical malpractice actions filed by establishing a procedure that encourages the parties to negotiate 'outside the structure and atmosphere of the formal litigation process.' " (*Woods* v. *Young, supra,* at p. 320.) After discussing section 365,[6] the Supreme Court also observed: "Unless the giving of the 90-day notice tolls or extends the statute of limitations, sections 364(a) and 365 pose a dilemma for the plaintiff's attorney who serves the notice within the last 90 days of the 1-year limitations period. In that situation, the attorney must either comply with section 364(a)'s proscription against commencing the action during that statute's 90-day waiting period, thereby forfeiting the client's cause of action, or the attorney must file the lawsuit during the statutory 90-day waiting period, thereby 'triggering' section 365's provision of possible disciplinary action by the State Bar. In the absence of tolling or extension, a plaintiff's attorney wishing to protect the client's rights without risking disciplinary proceedings would have to serve the 90-day notice within 9 months of the plaintiff's discovery of the injury. This would, in effect, shorten the statutory limitations period from one year to nine months. [¶] The Legislature attempted to resolve this problem through section 364, subdivision (d) . . . ." (*Woods* v. *Young, supra,* at pp. 320-321.) However, as the Supreme Court recognized, "literal application of section 364(d)" would lead to "incongruous results" by requiring "a medical malpractice plaintiff to commence the lawsuit in the same period of time during which section 364(a) precludes the plaintiff from filing suit." (*Id.* at pp. 321, 325.)[7]

---

[6]Section 365 provides: "Failure to comply with this chapter shall not invalidate any proceedings of any court of this state, nor shall it affect the jurisdiction of the court to render a judgment therein. However, failure to comply with such provisions by any attorney at law shall be grounds for professional discipline and the State Bar of California shall investigate and take appropriate action in any such cases brought to its attention."

[7]In *Woods* v. *Young, supra,* 53 Cal.3d 315, the Supreme Court gave an example of the "incongruous results" of applying subdivision (d) of section 364 literally: "A plaintiff serves the 90-day notice of intent to sue required by section 364(a) 50 days before expiration of the 1-year statute of limitations. Because section 364(d) would in that case extend the 1-year limitations period by 90 days, calculated from the date of service of the 90-day notice, the plaintiff has 1 year and 40 days in which to file the action. [¶] If our hypothetical plaintiff were to file suit on the last day of the extension, the plaintiff would violate the 90-day waiting requirement of section 364(a), which requires the plaintiff to give the defendant health care provider *at least* 90 days' prior notice of intent to sue. If, however, the plaintiff were to file

■ Resolving the problem created by a literal application of subdivision (d) of section 364, the Supreme Court construed "section 364(d) as tolling the one-year statute of limitations when section 364(a)'s ninety-day notice of intent to sue is served during, but not before, the last ninety days of the one-year limitations period. Because the statute of limitations is tolled for 90 days and not merely extended by 90 days from the date of service of the notice, this construction results in a period of 1 year and 90 days in which to file the lawsuit." (*Woods* v. *Young, supra,* 53 Cal.3d at p. 325.) The Supreme Court observed: "In providing for a waiting period of at least 90 days before suit can be brought, this construction achieves the legislative objective of encouraging negotiated resolutions of disputes. [¶] Moreover, this interpretation resolves the dilemma . . . that sections 364(a) and 365 pose for a plaintiff's attorney who serves the 90-day notice of intent to sue required by section 364(a) in the last 90 days of the 1-year limitations period. Our construction of section 364 as *tolling, rather than merely extending,* the statute of limitations, permits the plaintiff to commence the action after the 90-day 'waiting' period has elapsed and before the limitations period has expired." (*Id.* at pp. 325-326, italics added.) Thus, a "plaintiff who serves the notice of intent to sue on the last day of the limitations period has one day after the ninety-day waiting period to file the complaint." (*Id.* at p. 326, fn. 3.)

In sum, "when a plaintiff gives the 90-day notice of intent to sue required by section 364(a) in the last 90 days of the 1-year statute of limitations that statute is tolled for 90 days." (*Woods* v. *Young, supra,* 53 Cal.3d at p. 328.)

B

*Effect of Section 1013, Subdivision (a)*

■ The superior court essentially concluded subdivision (d) of section 364 did not entitle Silver to a 90-day tolling of section 340.5's 1-year statute of limitations because such statutory limitations period expired after Silver mailed the section 364 notices to McNamee but before such notices became effective 10 days later under section 1013, subdivision (a). However, the court misperceived section 1013, subdivision (a) as delaying the effectiveness of Silver's section 364 notices.

---

the action one day after the extended period, that is, one year and forty-one days after discovery of the injury, the action would be barred by the one-year statute of limitations because it was filed one day beyond the limitations period as extended. [¶] Thus, when applied literally, section 364(d) accomplishes nothing." (*Woods* v. *Young, supra,* at p. 321, italics in original.)

As noted, section 364, subdivision (c) provides that service of a notice of intent to sue "may be served in the manner prescribed" in section 1010[8] et seq. Section 1011 deals with the method and place of personal service. Sections 1012[9] and 1013[10] involve service by mail. Section 1013a deals with the method of proof of service by mail.

█ "A successful service by mail requires strict compliance with the statute." (*Valley Vista Land Co.* v. *Nipomo Water & Sewer Co.* (1967) 255 Cal.App.2d 172, 174 [63 Cal.Rptr. 78].) Thus, "effective service requires strict compliance with Code of Civil Procedure sections 1012, 1013, and 1013a . . . ." (*Sharp* v. *Union Pacific R.R. Co.* (1992) 8 Cal.App.4th 357, 360 [9 Cal.Rptr.2d 925].) █ This record contained evidence sufficient to support a conclusion such statutory requirements were met.

---

[8]Section 1010 provides in relevant part: "Notices and other papers may be served upon the party or attorney in the manner prescribed in this chapter, when not otherwise provided by this code."

[9]Section 1012 provides: "Service by mail may be made where the person on whom it is to be made resides or has his office at a place where there is a delivery service by mail, or where the person making the service and the person on whom it is to be made reside or have their offices in different places between which there is a regular communication by mail."

[10]Section 1013, subdivision (a) provides: "In case of service by mail, the notice or other paper must be deposited in a post office, mailbox, subpost office, substation, or mail chute, or other like facility regularly maintained by the United States Postal Service, in a sealed envelope, with postage paid, addressed to the person on whom it is to be served, at the office address as last given by that person on any document filed in the cause and served on the party making service by mail; otherwise at that party's place of residence. *The service is complete at the time of the deposit, but any period of notice* and any right or duty to do any act or make any response within any period or on a date certain after the service of the document, *which time period* or date *is prescribed by statute* or rule of court, *shall be extended* five days, upon service by mail, if the place of address is within the State of California, *10 days if the place of address is outside the State of California but within the United States*, and 20 days if the place of address is outside the United States, but the extension shall not apply to extend the time for filing notice of intention to move for new trial, notice of intention to move to vacate judgment pursuant to Section 663a, or notice of appeal. This extension applies in the absence of a specific exception provided for by this section or other statute or rule of court." (Italics added.)

Subdivision (c) of section 1013 provides in relevant part that service by express mail "is complete at the time of the deposit, but any period of notice and any right or duty to do any act or make any response within any period or on a date certain after the service of the document served by Express Mail or other method of delivery providing for overnight delivery shall be extended by two court days . . . ."

Subdivision (e) of section 1013 provides in relevant part: "Service by facsimile transmission shall be permitted only where the parties agree and a written confirmation of that agreement is made." Subdivision (e) also provides that service by facsimile "is complete at the time of transmission, but any period of notice and any right or duty to do any act or make any response within any period or on a date certain after the service of the document, which time period or date is prescribed by statute or rule of court, shall be extended, after service by facsimile transmission, by two court days . . . ."

Evidence indicated Silver complied with section 1012 by mailing the section 364 notices to McNamee's residence address, a place with a delivery service by mail. Evidence also indicated Silver complied with section 1013, subdivision (a) by depositing the notices in the United States mail in sealed envelopes, with postage paid, addressed to McNamee at his place of residence. Evidence further indicated the paralegal for Silver's counsel executed a proof of service by regular mail complying with section 1013a, subdivision (1). Thus, although McNamee claimed the notice sent by certified mail was rejected in February 1997 and the notice sent by regular mail was not received until March 1997, service was complete on January 8, 1997, when those notices were deposited in the mail. (§ 1013, subd. (a); *Sharp* v. *Union Pacific R.R. Co., supra,* 8 Cal.App.4th at p. 360.) Silver did not have the burden to show the notices were actually received by McNamee. (*Ibid.*) On the contrary, "addressee" McNamee incurred "the risk of the failure of the mail." (*Caldwell* v. *Geldreich* (1955) 137 Cal.App.2d 78, 81 [289 P.2d 832].) Hence, since Silver's section 364 notices were served on McNamee on January 8, 1997—within 90 days of the January 11, 1997, expiration date of section 340.5's 1-year limitations period—the time for commencement of Silver's action was tolled by 90 days from January 8, 1997, until April 8, 1997. (§ 364, subd. (d).) Accordingly, for purposes of the statute of limitations, Silver's lawsuit filed on March 21, 1997, was timely. (*Ibid.*)

Nonetheless, the superior court determined Silver's lawsuit to be untimely. In making such determination, the court concluded the effective date of Silver's section 364 notices—whose service on McNamee in Ohio was completed upon their deposit in the mail on January 8, 1997—was delayed by 10 days under the portion of subdivision (a) of section 1013 providing that "service is complete at the time of the deposit, but any period of notice and any right or duty to do any act or make any response within any period or on a date certain after the service of the document, which time period or date is prescribed by statute or rule of court, shall be extended . . . 10 days if the place of address is outside the State of California but within the United States . . . ." However, we have not been alerted to any case law supporting the superior court's interpretation of such portion of section 1013, subdivision (a) as operating to delay the effective date of service so as to preclude application of section 364, subdivision (d) to toll by 90 days the applicable statute of limitations. Indeed, such interpretation contravenes the language of section 1013, subdivision (a) that expressly provides service by mail is "complete" upon deposit in the mail.[11]

Contrary to the superior court's interpretation of subdivision (a) of section 1013, case law suggests such statute at most may have entitled McNamee to

[11]Under the superior court's interpretation of subdivision (a) of section 1013 as delaying the effective date of service by mail so as to preclude application of subdivision (d) of section 364 to toll the statute of limitations, Silver was required to mail McNamee the notices no later

10 additional days of prior notice under section 364, subdivision (a) of Silver's intent to commence this lawsuit. (See, e.g., *California Business Council* v. *Superior Court* (1997) 52 Cal.App.4th 1100, 1105 [62 Cal.Rptr.2d 7]; *Citicorp North America, Inc.* v. *Superior Court* (1989) 213 Cal.App.3d 563, 567 [261 Cal.Rptr. 668]; *Fritts* v. *County of Kern* (1982) 135 Cal.App.3d 303, 308 [185 Cal.Rptr. 212].)[12] Such application of section 1013, subdivision (a) would thus have required that Silver not commence this lawsuit until April 18, 1997 (100 days after January 8, 1997, the date when Silver served McNamee by mail with notice of intent to sue).[13] However, even if McNamee were entitled to an additional 10 days of notice of Silver's intent to sue, such application of section 1013, subdivision (a) would not render this lawsuit untimely. Instead, any failure by Silver to provide McNamee under section 1013, subdivision (a) with an additional 10 days of section 364 notice would do no more than present possible grounds for professional discipline against Silver's attorney. (§ 365; *Woods* v. *Young,*

---

than January 1, 1997 (10 days before section 340.5's 1-year statute of limitations was to expire) in order to avoid a time bar. Thus, in this case, the superior court's interpretation "would, in effect, shorten the statutory limitations period from" 366 days (1 year) to 356 days. (*Woods* v. *Young, supra,* 53 Cal.3d at p. 321; see also *Russell* v. *Stanford University Hospital, supra,* 15 Cal.4th at pp. 789-790.) However, such result would be inconsistent with the legislative intent manifested in subdivision (d) of section 364 "that if section 364(a)'s 90-day notice of intent to sue is served during the last 90 days of the statute of limitations, the limitations period is 'extended 90 days from service of the notice.' " (*Woods* v. *Young, supra,* at p. 321.) As stated by the Supreme Court, "[t]his additional time could give the plaintiff more, but never less, than the statutory one-year period in which to bring the lawsuit. Thus, section 364(d) reflects the Legislature's intent to allow a medical malpractice plaintiff at least a year in which to file the action." (*Ibid.*)

[12]"Section 1013 specifies the event, service by mail, which invokes its provisions. It applies whenever (1) *a statute* or rule of court or common law rule *prescribes a period of notice* or period within which to exercise a right or perform a duty and (2) the period is commenced by service by mail." (*California Business Council* v. *Superior Court, supra,* 52 Cal.App.4th at p. 1105, fn. omitted, italics added.)

"Section 1013 is a procedural statute of general application [citation] and it is not limited only to rules or statutes which expressly incorporate its terms. It has been broadly construed. [Citation.] In the absence of an exception expressly created by statute or rules, section 1013 applies to extend *any* prescribed time period following service by mail. [Citation.] It is a 'service' statute and was intended by the Legislature to extend statutory deadlines and time periods initiated or triggered by a notice, document, or request *which is served by mail.*" (*Citicorp North America, Inc.* v. *Superior Court, supra,* 213 Cal.App.3d at p. 567, fn. omitted, italics in original.)

In *Fritts* v. *County of Kern, supra,* 135 Cal.App.3d 303, the appellate court stated section 1013, subdivision (a) "was enacted 'to make allowance for the uncertainties of mail delivery by giving recipients of mailed notices or papers longer time to act or exercise their rights.' " (*Fritts* v. *County of Kern, supra,* at p. 308.)

[13]As noted, by imposing a 90-day waiting period under subdivision (a) of section 364, "the Legislature sought to encourage settlement outside the formal litigation process." (*Woods* v. *Young, supra,* 53 Cal.3d at p. 326.)

*supra,* 53 Cal.3d at p. 324.)[14] Thus, regardless whether section 1013, subdivision (a) entitled McNamee to an additional 10 days of notice, since Silver's service on McNamee by mail with the 2 notices of intent to sue was complete upon deposit of those notices in the mail on January 8, 1997 (during the last 90 days of section 340.5's 1-year limitations period), the statute of limitations was tolled for 90 days from January 8, 1997, until April 8, 1997. (§ 364, subd. (d); *Woods* v. *Young, supra,* at pp. 319, 325-326.)[15] Hence, this lawsuit, filed on March 21, 1997, well before expiration of the one-year limitations period as tolled under subdivision (d) of section 364, was timely.[16]

---

[14]In *Woods* v. *Young, supra,* 53 Cal.3d 315, the Supreme Court observed: "Section 365 states that a medical malpractice plaintiff's failure to comply with the 90-day notice requirement of section 364(a) does *not* invalidate court proceedings and is *not* jurisdictional, although failure to comply may subject the plaintiff's attorney to State Bar disciplinary proceedings. Therefore . . . section 365 does not legally prevent a plaintiff from commencing a medical malpractice action during the mandatory 90-day waiting period set forth in section 364(a)." (*Id.* at p. 324, italics in original.)

However, under the circumstances here, the success of any disciplinary action against Silver's attorney for filing this lawsuit during the 90-day waiting period of section 364, subdivision (a) would appear remote. As discussed, in cases resolving asserted conflicts between section 364 and other statutes, the Supreme Court has interpreted section 364 in a manner "permitting plaintiff's attorneys to commence timely actions without subjecting themselves to potential disciplinary action." (*Russell* v. *Stanford University Hospital, supra,* 15 Cal.4th at p. 790; *Woods* v. *Young, supra,* 53 Cal.3d at pp. 325-326.)

[15]In *Woods* v. *Young, supra,* 53 Cal.3d 315, the Supreme Court observed that subdivision (d) of section 364 was intended to preserve "the 90-day negotiation period by allowing additional time to bring the lawsuit when the plaintiff serves the 90-day notice in the last 90 days of the limitations period." (*Woods* v. *Young, supra,* at p. 326.)

[16]Case law suggests section 1013, subdivision (a) would not apply to toll the statute of limitations for an additional 10 days. In *Tielsch* v. *City of Anaheim* (1984) 160 Cal.App.3d 576 [206 Cal.Rptr. 740], the appellate court observed: "It is reasonably well settled that section 1013 does not extend statutes of limitations. For example, it has been held inapplicable to lengthen the 20-day period to request trial de novo after an arbitration award is filed [citation], the 6 months allowed to file an action against a public entity after a claim for damages is rejected [citation], or the 60 days provided for a trial court to grant a motion for new trial [citation]." (*Id.* at pp. 578-579.) Later, in *Camper* v. *Workers' Comp. Appeals Bd.* (1992) 3 Cal.4th 679 [12 Cal.Rptr.2d 101, 836 P.2d 888], the Supreme Court observed: " 'Consistent with the Legislature's exemption of notices of appeal [from the extension provided in connection with service by mail], Code of Civil Procedure section 1013 has been held to be inapplicable to other statutes that set forth jurisdictional deadlines.' " (*Id.* at p. 686, citing *Poster* v. *Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266, 274 [276 Cal.Rptr. 321, 801 P.2d 1072].) Similarly, in *Citicorp North America, Inc.* v. *Superior Court, supra,* 213 Cal.App.3d 563, the appellate court noted ". . . section 1013 cannot be utilized to extend jurisdictional limits [citation] or statutes of limitation [citations]." (*Id.* at p. 568, fn. 8.) In the same vein, in *Southwest Airlines* v. *Workers' Comp. Appeals Bd.* (1991) 234 Cal.App.3d 1421 [286 Cal.Rptr. 347], the appellate court observed section 1013 has been held inapplicable to extend various prescribed filing periods where "the time for seeking judicial review" was "jurisdictional." (*Southwest Airlines* v. *Workers' Comp. Appeals Bd., supra,* at p. 1425.)

In sum, we conclude the superior court erred in determining section 1013, subdivision (a) delayed by 10 days the effective date of Silver's service on McNamee of the notices of intent to sue so as to preclude application of section 364, subdivision (d) to toll by 90 days the 1-year limitations period of section 340.5.

### C

### *No Requirement of Actual Notice*

■ The superior court also concluded section 340.5's one-year limitations period expired before McNamee had "actual notice" of Silver's intent to sue and thus the statute of limitations was not tolled for ninety days under section 364, subdivision (d). Attacking that conclusion, Silver contends "actual notice" to McNamee was not required since Silver strictly complied with all relevant service statutes.

As discussed, "service is complete at the time the document is deposited in the mail. (Code Civ. Proc., § 1013, subd. (a).)" (*Sharp* v. *Union Pacific R.R. Co., supra,* 8 Cal.App.4th at p. 360; see also *McKeon* v. *Sambrano* (1927) 200 Cal. 739, 741-742 [255 P. 178]; *Heinlen* v. *Heilbron* (1892) 94 Cal. 636, 640 [30 P. 8]; *Caldwell* v. *Geldreich, supra,* 137 Cal.App.2d at p. 81.) "Further, the sender does not have the burden of showing the notice was actually received by the addressee." (*Sharp* v. *Union Pacific R.R. Co., supra,* at p. 360.) Moreover, ". . . the addressee incurs the risk of the failure of the mail." (*Caldwell* v. *Geldreich, supra,* at p. 81.)

The language of section 364 does not expressly require that before a limitations period may be tolled under subdivision (d) of such statute, a health care provider must receive "actual notice" of a plaintiff's intent to sue. However, McNamee contends case law has imposed a requirement that service of a section 364 notice must result in "actual notice" to such health care provider if the plaintiff is to take advantage of such tolling provision. Specifically, McNamee relies on *Godwin* v. *City of Bellflower* (1992) 5 Cal.App.4th 1625 [7 Cal.Rptr.2d 524] (*Godwin*); *Hanooka* v. *Pivko* (1994) 22 Cal.App.4th 1553 [28 Cal.Rptr.2d 70] (*Hanooka*); and *Derderian* v. *Dietrick* (1997) 56 Cal.App.4th 892 [65 Cal.Rptr.2d 800] (*Derderian*). However, those cases are factually distinguishable as involving situations where plaintiffs did not strictly comply with statutes governing the method of service.

In *Godwin, supra,* 5 Cal.App.4th 1625, the appellate court held that ". . . when a plaintiff who knows the names of treating doctors serves a notice of

intent to sue on the hospital within 90 days of the running of the statute of limitations, but fails to name or serve the known doctors, such notice [does not extend] the statute of limitations as to the unnamed doctors." (*Id.* at p. 1627.) The court observed that ". . . the specific notice requirements of section 364, subdivision (a) were designed to serve a distinct purpose, viz., to give a health care provider notice of the imminence of suit, and thus promote prelitigation settlement. This purpose can only be effectuated if the health care provider has actual notice." (*Id.* at p. 1631.) The court thus rejected the plaintiff's contention that notice to the hospital should be held sufficient notice to the treating physicians as the hospital's alleged agents. (*Ibid.*) The court stated that ". . . unless a health care provider has actual notice of a party's intent to sue, no prelitigation settlement can be considered, much less reached. Plaintiff's argument that the hospital was responsible for identifying and notifying the individual doctors ignores the undisputed fact that at the time he served the section 364 notice, plaintiff was aware of the doctors' identities and could have notified them. There can be little question that plaintiff was well positioned to comply with both the letter and spirit of section 364's notice requirement." (*Ibid.*) Hence, the court concluded: "Without addressing whether, under different circumstances, something less than actual notice would be sufficient, we hold that where, as here, a plaintiff has actual knowledge of the identities of the treating physicians whom he intends to sue, section 364, subdivision (a) notice on the hospital, without naming the physicians, is insufficient notice to them to extend the statute of limitations under section 364, subdivision (d)." (*Id.* at p. 1632.)

In *Hanooka, supra,* 22 Cal.App.4th 1553, the appellate court held the plaintiffs' service of a hospital with a notice naming defendant physicians did not constitute service on those physicians for purposes of section 364, subdivision (a). The court indicated reluctance "to impute knowledge of a principal to its agent, or to assign responsibility to a hospital for identifying and notifying individual doctors of actions commencing against them." (*Hanooka, supra,* at pp. 1559-1560.) Hence, the court found the plaintiffs "were in a position similar to that of the plaintiffs in *Godwin* [, *supra,* 5 Cal.App.4th 1625], in that they were aware of the doctors' identities and could easily have effected service of the notice." (*Id.* at p. 1560.) The court observed: "As we previously stated in *Godwin,* the purpose of the specific notice requirement of section 364, subdivision (a) is to promote prelitigation settlement, which can only be effectuated if the health care provider has actual notice." (*Ibid.*) The court thus concluded that where "doctors did not receive actual notice pursuant to section 364, subdivision (a), [the plaintiffs] cannot take advantage of the 90-day extension period provided by section 364, subdivision (d). Furthermore, we hold that a plaintiff cannot rely on a

hospital to forward section 364, subdivision (a) notices to individual physicians where, as here, the plaintiff has knowledge of the identity and location of the physicians." (*Ibid.*)

In *Derderian, supra,* 56 Cal.App.4th 892, the appellate court concluded ". . . it was not sufficient for [the plaintiffs] to send the section 364 notice letter to the address listed on the bill they possessed. From the face of the bill, [the plaintiffs] could not have gleaned adequate assurance that the Chatsworth post office box address of St. Luke Emergency Associates, from whom the bill was received, had any direct connection with [the defendant physician]." (*Id.* at p. 899.)

Thus, in *Derderian, supra,* 56 Cal.App.4th 892, *Hanooka, supra,* 22 Cal.App.4th 1553, and *Godwin, supra,* 5 Cal.App.4th 1625, the issue of "actual notice" arose in the context whether service on a defendant's purported principal of a notice of intent to sue the defendant constituted service on such defendant. Since the plaintiffs in those cases did not strictly comply with statutes involving service whether by mail or otherwise, the courts were required to consider the alternate theory whether the defendants had nevertheless received "actual notice" of the plaintiffs' intent to sue. However, unlike the plaintiffs in those cases, Silver strictly complied with statutes governing service by mail. Further, unlike the situation here, neither *Derderian, Hanooka,* nor *Godwin,* involved the adequacy of a method of service on a defendant directly. Nothing in those cases suggests that application of subdivision (d) of section 364 to toll the statute of limitations depends upon the defendant's receiving "actual notice" when served directly by a means authorized under sections 364 and 1010 et seq. in strict compliance with the statutory requirements. On the contrary, as discussed in *Godwin,* the appellate court expressly left open the issue whether something less than actual notice would be sufficient under other factual circumstances. (5 Cal.App.4th at p. 1632.) Similarly, in *Derderian,* the appellate court stated: "We do not hold, and need not address, the issue of whether section 364 requires that the health care provider receive actual notice in every case. Instead, under the circumstances present here, we hold that [the plaintiffs] did not take adequate steps which would be likely to result in actual notice to [the defendant]." (56 Cal.App.4th at p. 899, fn. 7.) Moreover, nothing in those cases suggests personal service of the section 364 notices on McNamee was required. Indeed, reasonably read, *Derderian,* indicates service directly on a defendant physician by an authorized means other than personal service would satisfy any requirement of "actual notice" for purposes of section 364: "There is no reasonable explanation as to why the [plaintiffs] did not avail themselves of the public records which assured notice of their malpractice claim would actually be sent to and received by [the defendant]. If [the

plaintiffs] had given notice to [the defendant] at the address he is required to file with the Medical Board of California, he could hardly claim he did not receive actual notice." (*Derderian, supra,* at p. 900, citing *Baughman* v. *Medical Board* (1995) 40 Cal.App.4th 398, 402 [46 Cal.Rptr.2d 498] (*Baughman*).[17])

In sum, on this record the superior court erred in concluding as a matter of law that without "actual notice" to McNamee, Silver's service by mail of the notices of intent to sue was insufficient to invoke the provisions of section 364, subdivision (d) to toll the statute of limitations governing this lawsuit.[18] Hence, the summary judgment favoring McNamee must be reversed.

## VI

### DISPOSITION

The judgment is reversed. Silver shall have costs on appeal.

McDonald, J., and McIntyre, J., concurred.

---

[17]Similar to the statute at issue in *Baughman, supra,* 40 Cal.App.4th 398, section 364 " 'does not require proof of service in the form of a return receipt signed by the party or other acknowledgment of receipt by the party, unlike other statutes governing service by mail.' " (*Baughman, supra,* at p. 402.) Further, the appellate court in *Baughman,* observed: "Due process of law does not require actual notice, but only a method reasonably certain to accomplish that end. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." (*Ibid.*) Serving McNamee by mail in strict compliance with statutory requirements could reasonably be chosen as the means to accomplish the desired result of "actually informing" McNamee of Silver's intent to commence a medical malpractice action against him. (*Ibid.*)

[18]The record also contained evidence raising a triable factual issue whether before January 11, 1997, McNamee in fact had "actual notice" of Silver's intent to sue. Similar to the situation in *Baughman, supra,* 40 Cal.App.4th 398, Silver submitted evidence indicating the notice sent by certified mail was " 'in fact delivered' " to McNamee's address but "deliberately refused." (*Id.* at p. 402.) Silver also submitted evidence sufficient to support a reasonable inference McNamee had "actual notice" of Silver's intent to sue by receiving no later than January 11, 1997, the notice sent by regular mail.